**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 3 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROYAL MACCABEES LIFE
INSURANCE COMPANY,

     Plaintiff-Counter-Defendant -
Appellant - Cross-Appellee,

v.

STEPHEN J. CHOREN,

     Defendant-Counter-Claimant -
Appellee - Cross-Appellant.

Nos. 03-1142 & 03-1154

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 99-WM-1031 (PAC))**

---

Jean E. Dubofsky (and Dean Neuwirth, Burke & Neuwirth, P.C., Denver, Colorado, on the briefs), Jean E. Dubofsky, P.C., Boulder, Colorado, for Plaintiff-Counter-Defendant - Appellant - Cross-Appellee.

Thomas L. Roberts (and Laura E. Schwartz, with him on the briefs), Roberts, Levin & Patterson, P.C., Denver, Colorado, for Defendant-Counter-Claimant - Appellee - Cross-Appellant.

---

Before **TACHA**, Chief Judge, **KELLY**, and **McCONNELL**, Circuit Judges.

---

**KELLY**, Circuit Judge.

_____

Plaintiff-Appellant/Cross-Appellee Royal Maccabees Life Insurance Company ("Royal") appeals from a judgment on a jury verdict in favor of Defendant-Appellee/Cross-Appellant Dr. Stephen J. Choren on a bad faith breach of insurance contract counterclaim. The jury awarded $425,000 in damages. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## Background

Prior to the incidents giving rise to this suit, Dr. Choren engaged in the general practice of dentistry in Colorado. Beginning in 1994, he experienced hand numbness and other symptoms that were diagnosed as consistent with nerve abnormalities. Over time, these symptoms worsened. In February 1997, Dr. Choren lacerated his left index finger to the bone while removing packing materials from a chair, necessitating surgery to reattach a severed nerve. During subsequent examination, he was diagnosed as suffering from bilateral carpal tunnel syndrome, tremors, and neck and shoulder pain. Although he attempted to return to his practice, by April 1997 Dr. Choren reached the conclusion, after consultation with his physician, that he was no longer able to practice dentistry.

Prior to the onset of his disability, Dr. Choren purchased an "own occupation" disability income insurance policy from Royal. He subsequently

exercised an option in the contract to purchase additional coverage on four occasions between 1984 and 1992. Dr. Choren also purchased a business overhead policy from Royal. Royal's policies provided that, if the insured could not perform the material and substantial duties of his profession, benefits would be payable over the insured's lifetime.

Dr. Choren submitted a claim under the policies for total disability in April 1997, dating back to February 1997. A neurologist subsequently certified Dr. Choren as disabled from practicing dentistry because his condition prevented him from safely performing fine motor work in a patient's mouth. In July 1997, Royal began making total disability payments of $9,000 per month to Dr. Choren.

In August 1997, the Colorado Division of Insurance forwarded to Royal an anonymous letter (written by Dr. Choren's office manager and dental assistant) alleging that Dr. Choren was engaged in insurance fraud. Receipt of the letter prompted a covert investigation of Dr. Choren's claims that culminated in the filing of this diversity suit in June 1999. During the course of its two-year investigation, Royal assembled evidence, including video surveillance of Dr. Choren windsurfing in Venezuela, that the insurer viewed as inconsistent with a claim of total disability. While engaging in this lengthy and expansive investigation, Royal at no time informed Dr. Choren that his claim was under investigation and continued to pay benefits under the policies.

In its complaint, Royal alleged that Dr. Choren had submitted a fraudulent insurance claim for total disability on the basis that he continued to practice dentistry after filing the claim and that he engaged in recreational activities that were inconsistent with his claim. Dr. Choren counterclaimed for breach of contract, bad faith breach of contract, outrageous conduct, violation of the Colorado Consumer Protection Act ("CCPA"), and institution of a vexatious action. The district court granted summary judgment to Royal on Dr. Choren's outrageous conduct and breach of contract counterclaims. The case was later tried in January 2002 and submitted to the jury on Royal's fraud claim and Dr. Choren's bad faith and CCPA counterclaims.

Through a series of special verdicts, the jury found that Dr. Choren was totally disabled under the terms of the policies and had not sought to defraud Royal. The jury further found that Royal acted in bad faith in the investigation and handling of Dr. Choren's claim and awarded him $225,000 in unspecified economic damages and $200,000 in unspecified non-economic damages. The jury rejected Dr. Choren's CCPA claim, finding that Royal did not engage in a deceptive trade practice. Following the jury's verdict, both parties filed several post-trial motions. The district court disposed of the motions in its Order on Post-Trial Motions of March 26, 2003, denying Royal's motion for a new trial on the issue of bad faith and dismissing Dr. Choren's counterclaim that the lawsuit

- 4 -

was vexatious. The district court also denied Dr. Choren's motion to alter or amend the judgment to award him tort damages for the present value of future disability benefits. On March 28, 2003, the district court entered judgment on the jury verdicts and this appeal followed.

## Discussion

On appeal, Royal asserts that the district court (1) erred in giving three bad faith jury instructions; and (2) committed plain error in failing to instruct the jury that (a) attorney fees were not compensable damages for bad faith breach of insurance contract, and (b) in the absence of other economic damages the jury could not award the insured non-economic damages for bad faith. Dr. Choren argues on cross-appeal that the district court erred (1) in treating the recovery of future benefits as a contract remedy (rather than as a remedy for bad faith breach of insurance contract), and (2) in excluding evidence on the CCPA claim of representations made at the time of sale of the insurance policies and by failing to instruct that post-sale claims handling could properly be considered as deceptive trade practices. We discuss each of these arguments in turn.

### A. Bad Faith Jury Instructions

We review legal challenges to tendered jury instructions de novo. Garrison v. Baker Hughes Oilfield Operations, Inc., 287 F.3d 955, 964 (10th Cir. 2002).

We review a challenge to a district court's decision to give an instruction for abuse of discretion. Elliott v. Turner Constr. Co., 381 F.3d 995, 1004-05 (10th Cir. 2004). Our inquiry in either case embraces a de novo review of the instructions in their entirety, judging not whether the instructions were flawless, but whether taken as a whole they accurately informed the jury of the issues before it and the governing legal principles by which to reach a decision. See Hardeman v. City of Albuquerque, 377 F.3d 1106, 1123 (10th Cir. 2004). If having engaged in this inquiry we determine that a district court has tendered a legally erroneous instruction, we must reverse if we find that the jury might have based its decision on the instruction. Wankier v. Crown Equip. Corp., 353 F.3d 862, 867 (10th Cir. 2003) (quoting Townsend v. Lumbermens Mut. Cas. Co., 294 F.3d 1232, 1242 (10th Cir. 2002)).

1. Coverage Investigation and Notification of the Insured of Coverage Issues

This case was tried in January 2002. Under the then existing rule, "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51 (2002). The current rule retains the dual requirements of objecting on the record with sufficient specificity. See Fed. R. Civ. P. 51(c)(1) (2003). To preserve the objection, a party must proffer the same grounds raised on appeal,

Reed v. Landstar Ligon, Inc., 314 F.3d 447, 452 (10th Cir. 2002) (quoting

Comcoa, Inc. v. NEC Tels., Inc., 931 F.2d 655, 660 (10th Cir. 1991)), with

sufficient clarity to render the grounds "'obvious, plain, or unmistakable.'"

Comcoa, 931 F.2d at 660 (quoting Aspen Highlands Skiing Corp. v. Aspen Skiing

Co., 738 F.2d 1509, 1514 (10th Cir. 1984)).  Absent a proper objection, a party's

argument is deemed waved.  Hardeman, 377 F.3d at 1118.

Dr. Choren originally proffered Instruction 26, which read:

> Proceeding with a coverage investigation covertly to gain
> advantage over an insured is improper.  When the interests of the
> insurer and the insured conflict as a result of the discovery of
> coverage issues, the insurer may not covertly build a case against its
> insured, but should promptly take steps to see that the insured is
> made fully aware of and understands the problem.

App. Vol. IV at 1066.  At the jury instruction conference, Royal objected to this

proposed instruction, stating:  "It's not Colorado law.  It doesn't state Colorado

law.  It shouldn't be given."  App. Vol. XI at 3214.  However, Royal conceded

during the ensuing colloquy that "proceeding with [a] coverage investigation to

gain advantage over an insured is improper" and that "the insurer has a duty to

notify the insured once [a] problem is discovered by it as to coverage."  App. Vol.

XI at 3215-16.  These two concessions provide the substantive basis for

Instruction 43A as tendered by the court.  While it is true that the court noted a

continuing objection to "giving [Instruction 43A] at all," App. Vol. XI at 3218,

we believe Royal has waived its legal argument, having conceded the validity of

the duties encompassed by Instruction 43A. Accordingly, we review Royal's challenge to Instruction 43A for plain error. Hardeman, 377 F.3d at 1118.

To succeed on a plain error review, the challenging party must demonstrate (1) an error (2) that is plain, meaning clear or obvious under current law, and (3) affecting substantial rights. Id. If these elements are satisfied, "'we may exercise discretion to correct the error if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" Id. (quoting United States v. Ruiz-Gea, 340 F.3d 1181, 1185 (10th Cir. 2003)). Under this standard, we will not disturb a district court's action absent exceptional circumstances. No such circumstances are demonstrated here.

Royal's challenge to Instruction 43A necessarily depends on the assertion that the Colorado Supreme Court would not impose requirements on insurers to promptly notify insureds of coverage disputes and abstain from engaging in investigations to gain an advantage over the insured. Both parties concede that the Colorado Supreme Court has yet to pronounce such rules. Aplt. Opening Br. at 12 n.6; Aplee. Opening/Response Br. at 22. In a diversity suit, the content of substantive jury instructions is derived from controlling state law. Elliott, 381 F.3d at 1004 (citing Blanke v. Alexander, 152 F.3d 1224, 1232 (10th Cir. 1998)). A federal court sitting in diversity must apply state law as propounded by the forum's highest court. Rancho Lobo, Ltd. v. Devargas, 303 F.3d 1195, 1202 n.2

(10th Cir. 2002). Absent controlling precedent, the federal court must attempt to predict how the state's highest court would resolve the issue.[1] F.D.I.C. v. Schuchmann, 235 F.3d 1217, 1225 (10th Cir. 2000).

While we realize that uncertainty inheres in every Erie prediction made in federal court, we do not believe that the district court's resolution of this issue arises to a *clear or obvious* error under current law, especially since Royal specifically agreed that each sentence of the instruction was correct. Royal has neither pointed us to, nor have we found, contradictory Colorado law specifically barring the duties enunciated in Instruction 43A. Under our limited review, we will not disturb the district court's determination under these circumstances. The district court did not commit plain error in tendering Instruction 43A to the jury.

2. Duties of IME Physicians and Presumption that Injuries Are Not Self-Inflicted

Royal next argues that Instructions 46B and 46C, while properly stating Colorado law, prejudicially bolstered Dr. Choren's case because the jury did not have to decide the issues raised by the instructions. Aplt. Opening Br. at 21.

---

[1]Royal makes much of the fact that during the course of the instruction conference the district court remarked in reference to Instruction 43A: "I don't know whether that's the law or not. I am relying on you people." App. Vol. XI at 3217. Whether the district court was being facetious is not clear. Of course, the district court has an independent duty to determine or predict state law. We do not believe the district court failed in the exercise of that duty. The district court heard the parties on the issue, including Royal's objections, and resolved the issue independently after Royal had conceded the legal obligations encompassed by Instruction 43A.

Royal further argues that Instruction 46B conflicted with Instructions 7, 8, and 10, telling the jurors that they are the sole arbiters of witness credibility and of the weight of the testimony. Aplt. Opening Br. at 17. Instruction 46B stated:

> The physician who conducts an independent medical examination (an "IME") does not owe the insured a duty of care to diagnose his condition correctly.
> On the other hand, a treating physician owes a duty of care in diagnosing a patient's condition and may be liable to the patient for an incorrect diagnosis.

App. Vol. VI at 1432. Instruction 46C stated: "The law presumes that injuries are not intentionally self-inflicted." App. Vol. VI at 1433.

As a preliminary matter, Dr. Choren argues that Royal failed to preserve the issues noted above for appeal. Aple. Opening/Response Br. at 17. Having reviewed the record, we find that Royal preserved the issues for appeal. Dr. Choren misconstrues Royal's argument regarding the instructions, characterizing it as asserting that the instructions "unduly dignified what should have been mere factual arguments." Aple. Opening/Response Br. at 21. In so doing, Dr. Choren converts the argued effect of the instructions into Royal's principal grounds on appeal. Royal clearly objected during the instruction conference on the grounds that the issues raised by the instructions were not properly before the jury, App. Vol. XI at 3223-24, 3226, and that Instruction 46B would lead to confusion in the jury, App. Vol. XI at 3224. These are precisely the issues before us. The language employed by Royal was sufficiently clear to raise the issue before the

- 10 -

district court and permit it to alter the instructions accordingly.  See Rogers v. N. Rio Arriba Elec. Coop., Inc., 580 F.2d 1039, 1042 (10th Cir. 1978).

Returning to the principal argument before us, the jury in this case heard conflicting evidence concerning the existence and extent of Dr. Choren's disability, offered by both treating physicians and independent medical experts.  It also heard evidence about Royal's suspicion that Dr. Choren's finger laceration was self-inflicted.  The parties agree that the statements of law are correct.  We think it was within the district court's discretion to inform the jury of factors that might be considered in evaluating this evidence.  Contrary to Royal's argument, these instructions do not amount to an endorsement of Dr. Choren's theory of bad faith.  They in no way contravene or diminish the court's general instructions that the jurors are the sole arbiters of credibility and decide what weight to accord witness testimony.  We find no reversible error.  The instructions taken as a whole adequately instructed the jury.  See Hardeman, 377 F.3d at 1123.

B.  Damage Instructions

Royal's final argument is that the district court committed plain error in failing to instruct the jury that attorney's fees could not be construed as economic damages under Dr. Choren's bad faith counterclaim and that non-economic damages could not be awarded in the absence of economic damages.  Aplt. Opening Br. at 23.  Royal concedes that it did not request such instructions, and

therefore did not preserve the error below. Aplt. Opening Br. at 25.

"A court may consider a plain error in the instructions affecting substantial rights that has not been preserved." Fed. R. Civ. P. 51(d)(2). We have consistently noted that the plain error standard in civil cases is limited to errors that "'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" Phillips v. Hillcrest Med. Ctr., 244 F.3d 790, 802 (10th Cir. 2001) (quoting Polys v. Trans-Colorado Airlines, Inc., 941 F.2d 1404, 1408 (10th Cir. 1991)). Plain error review presents "an extraordinary, nearly insurmountable burden." Id. To mount a successful plain error challenge, a party must demonstrate (1) an error, (2) that is plain or obvious under existing law, and (3) that affects substantial rights. Beaudry v. Corr. Corp. of Am., 331 F.3d 1164, 1168 (10th Cir. 2003). Finally, we view instructions as a whole to determine whether the jury might have been misled. Id. We will uphold the verdict in the "'absence of substantial doubt that the jury was fairly guided.'" Id. (quoting United States v. Wiktor, 146 F.3d 815, 817 (10th Cir. 1998)).

1. Attorneys Fees as Economic Damages

Royal first asserts that the district court's failure to instruct the jury that attorneys fees could not be considered economic damages under Colorado law constituted plain error. Royal relies on Bernhard v. Farmers Insurance Exchange, 915 P.2d 1285 (Colo. 1996). In Bernhard, the plaintiff brought a bad faith breach

- 12 -

of insurance contract claim against her insurer for failing to settle a third-party claim within her insurance limits. Id. at 1286-87. The Colorado Court of Appeals had previously set aside the trial court's award of attorneys fees in the action. Id. at 1287. In affirming the decision, the Colorado Supreme Court propounded an unequivocal rule: "[U]nless specifically provided for in the insurance contract, attorney fees are not recoverable upon successful litigation of a bad faith breach of insurance contract claim." Id.; Allstate Ins. Co. v. Huizar, 52 P.3d 816, 818 (Colo. 2002).

Royal contends that failing to give the instruction was highly prejudicial in that the only evidence Dr. Choren presented concerning economic damage was personal testimony that he had paid his attorneys in excess of $200,000. Aplt. Opening Br. at 24-25. The jury subsequently returned an award of $225,000 in unspecified economic damages. Dr. Choren counters that the jury heard evidence that he suffered economic loss from Royal's failure to make timely payment of business overhead expenses (total payment on that policy was $6,900 with a maximum of $23,000 possible, App. Vol. IX at 2524) and that he suffered further economic damage from the loss of use of policy benefits. Aple. Opening/Response Br. at 36-37.

Royal admits that it did not object to the testimony about attorney's fees at trial. Aplt. Opening Br. at 25. Nor did it request either a limiting instruction or

an interrogatory, the latter as contemplated by Federal Rule of Civil Procedure 49(b) whereby issues of fact necessary to a decision could be recorded by the jury and compared to the verdict. On direct, Royal's claims investigator testified why Royal decided to file this action against Dr. Choren and in the process stated "we decided that we could continue to make payment so as not to harm him so he had the funds to live, but we decided to present the matter to the Court and let the Court decide." App. Vol. IX at 2516. Dr. Choren's counsel asked Dr. Choren whether he had been able to use the monthly benefits to live on. Dr. Choren responded no because he had to pay over $200,000 in attorney's fees to defend. App. Vol. X at 2955. On cross examination, Royal's counsel pursued the matter, bringing out that part of those attorney's fees were for counterclaims. App. Vol. X at 2963.

After examining Royal's role in inducing the testimony, and the presence of some evidence suggesting economic damages, we conclude that Royal cannot demonstrate plain error. We can hardly say that it should have been obvious to the trial judge that a Bernhard instruction was necessary, given the manner in which the evidence about attorney's fees came in. A limiting instruction tendered by the parties would have been preferable. But the jury heard testimony relevant to Royal's untimely payment of business overhead expenses. App. Vol. IX at 2524, 2593-94. The jury also might have inferred that Dr. Choren suffered

economic damage from his inability to fully utilize the benefits provided under the policy once coverage was contested. Having agreed to a general form of verdict as to the extent of economic damages, Royal cannot now speculate as to what elements made up that verdict.

2. Non-Economic Damages in the Absence of Economic Damages

Royal further argues that the district court committed plain error in failing to instruct the jury that in an action for bad faith breach of an insurance contract Colorado law precludes an award for non-economic damages in the absence of economic damages. Aplt. Opening Br. at 25. Royal's argument is foreclosed by the Colorado Supreme Court's decision in Goodson v. American Standard Insurance Co. of Wisconsin, 89 P.3d 409 (Colo. 2004).[2] In Goodson, the Colorado Supreme Court overruled a court of appeals decision requiring a showing of substantial property or economic loss as a prerequisite for an award of emotional damages in a bad faith breach of insurance contract. Id. at 412. Positing that an insured "purchases insurance in the first place so as not to suffer . . . anxiety, fear, stress, and uncertainty," the court held that damages for emotional distress are available in bad faith insurance contract cases on a showing of the insurer's liability, as opposed to the insured's economic loss. See id. at 417. Irrespective of our finding that the jury's damage verdict with respect to

---

[2]The decision in Goodson was rendered after final briefing of this appeal.

economic damages was supported by a basis in the record, Goodson controls our consideration of Royal's claim. We find that the district court did not commit plain error in concluding that Colorado law permits an award of non-economic damages in the absence of economic damages.

C. Recovery of Future Benefits

On cross-appeal, Dr. Choren argues that the district court erred in precluding evidence concerning future benefits and failing to alter or amend the judgment to include the present value of future benefits, some $2,491,851. App. Vol. VI at 1564. The district court determined, after balancing several considerations, that an award of future benefits was not appropriate in this case. The district court treated Dr. Choren's motion to alter or amend as a motion for reconsideration because it would have required reversal of pretrial rulings. App. Vol. VI at 1564, 1567. We ordinarily review motions for reconsideration for abuse of discretion. Matosantos Commercial Corp. v. Applebee's Int'l, Inc., 245 F.3d 1203, 1213 (10th Cir. 2001). However, underpinning the district court's decision was a prior determination that Colorado law would not permit a lump-sum award of future benefits under the facts present here. App. Vol. VIII at 2374-76. We review the district court's determinations of state law de novo. Cooper, 271 F.3d at 1251.

As recently as its decision in Goodson, the Colorado Supreme Court has

reiterated the general principle that "[a]n insured can recover damages for bad faith breach of insurance contract based on traditional tort principles." 89 P.3d at 415 (citing Lira v. Shelter Ins. Co., 913 P.2d 514, 517 (Colo. 1996)). Further, the court has refused to limit the available categories of damages in bad faith claims. Id. at 416. However, the precise question of whether lump-sum awards for future benefits are available in such actions remains unresolved. As a federal court sitting in diversity, we must predict how the Colorado court would decide this issue. Schuchmann, 235 F.3d at 1225.

At the outset, we note certain facts that informed the district court's decision on this legal issue and that we believe are pertinent to our own determination. First, the district court found that Royal had not repudiated the contract in question. App. Vol. VI at 1565, VIII at 2376. Second, the expectations under the contract embraced the possibility that benefits would cease should Dr. Choren recover from his disability. App. Vol. VI at 1566, VIII at 2375. Third, the expectations under the contract were payments for present disability, not future disability. App. Vol. VI at 1565; App. Vol. VIII at 2375. Finally, we note the jury's finding that Royal had acted in bad faith in the "investigation and handling" of Dr. Choren's claim. App. Vol. VI at 1457.

Our evaluation, like the district court's, begins with the United States Supreme Court's decision in New York Life Insurance Co. v. Viglas, 297 U.S.

672 (1936). In Viglas, the plaintiff brought suit after being denied disability payments from his insurer. Id. at 675. He sought the award of future benefits as measured under the contract. Id. at 675-76. In denying the plaintiff future benefits as the measure of recovery, Justice Cardozo, writing for a unanimous court, focused on the fact that the insurer had not repudiated the policy in question. Id. at 676. Instead, the insurer had sought protection under the contract terms, arguing that the plaintiff was no longer disabled. Id. Finding no repudiation of the contract, the court refused to impose an award of future benefits where there was no allegation that the insurer had made its claim under the contract in bad faith or as a "disingenuous pretense." Id. at 678.

In discussing Viglas, the district court noted correctly that Royal had not repudiated the contract in question here. Rather, Royal had chosen to seek enforcement of the contract terms, terms it felt supported its claim against Dr. Choren. Dr. Choren argues on appeal that Royal's initial claim for rescission, abandoned at the court's insistence that Royal choose one claim for relief, functioned as a repudiation of the contract. Thus, according to Dr. Choren, the instant case falls well outside the orbit of Viglas. We do not believe the Colorado cases cited by Dr. Choren support this assertion. See, e.g. Schneiker v. Gordon, 732 P.2d 603, 611 (Colo. 1987) (describing anticipatory repudiation as occurring when a party makes a communication rendering performance impossible or

evidences a determination not to continue in performance). In this case, Royal continued to make payments under the policy and elected, whether at the court's insistence or not, to seek to enforce the terms of the contract. Royal at no time preemptively denied coverage to Dr. Choren, but instead chose to have the issue of coverage adjudicated. These circumstances do not amount to an obvious repudiation of the contract.

Irrespective of this argument, the Supreme Court's decision in Viglas informs but does not conclude our consideration of the present issue. In Viglas, the Court was careful not to craft "an invariable rule whereby the full value of a bargain may never be recovered for any breach of contract falling short of repudiation or intentional abandonment." Id. at 679. We also note that Viglas did not involve a bad faith breach of insurance contract claim. On these bases, we do not believe that Viglas forecloses an award of future benefits in a bad faith breach of contract claim, nor do we find that the district court made such a determination below. Instead, the district court considered, as do we, decisions outside the forum and the factual circumstances of the instant case in reaching its determination.

Dr. Choren directs us to decisions outside Colorado where courts have permitted the award of future benefits in actions involving insurance contract disputes. See, e.g. DeChant v. Monarch Life Ins. Co., 554 N.W.2d 225, 228 (Wis.

Ct. App. 1996) (holding that lump-sup award for future benefits is permissible in a suit against insurer on a finding of repudiation based on terminating disability payments in bad faith); Lone Star Life Ins. Co. v. Griffin, 574 S.W.2d 576, 579 (Tex. App. 1978) (finding repudiation of contract where insurer communicated that payment of benefits would cease and affirming, without discussion, an award for future benefits); Cont'l Cas. Co. v. Vaughn, 407 S.W.2d 818, 822-23 (Tex. App. 1966) (finding anticipatory breach where insurer had denied liability without just cause and holding that a suit for future benefits arises not under the contract but at law for damages resulting from the breach). Royal, in contrast, points to cases precluding an award of future benefits under disability contracts, although none of the cases upon which Royal relies involved a finding of bad faith breach of contract. See Rahman v. Paul Revere Life Ins. Co., 684 F. Supp. 192 (N.D. Ill. 1988); Teague v. Springfield Life Ins. Co., 285 S.E.2d 860 (N.C. Ct. App. 1982).

We believe the categorical rules urged upon us by the parties are not supported by either the cases cited or the circumstances of the instant dispute. Dr. Choren's authorities depend, either explicitly or implicitly, on a finding of repudiation or anticipatory breach. As explained above, the evidence here does not support such a finding. Royal's authorities, on the other hand, did not arise in the context of bad faith breach of contract claims, and thus offer little guidance on how to balance the conflicting policy considerations underlying tort and

contract disputes.  We do find, however, one aspect of the Wisconsin appellate court's decision in DeChant persuasive.  After reviewing existing case law, the Wisconsin court concluded, and we agree, that trial judges enjoy broad discretion to shape remedies in bad faith insurance cases to ensure that successful parties receive compensation in accordance with their legitimate expectations under the contract as determined by the court.  DeChant, 554 N.W.2d at 228.

Given its reticence in precisely defining the types of relief available to successful parties in bad faith breach of insurance contract claims, we do not believe the Colorado Supreme Court would embrace a categorical rule mandating that an award of future benefits be available in every action involving a bad faith breach.  Nor do we believe that the court would preclude such an award in all cases involving benefits contingent on continuing disability.  Rather, we believe the Colorado Supreme Court would hold, as did the court in DeChant, that the determination of whether or not an award of future benefits is available lies in the discretion of the trial court after considering such factors as the relationship of the parties, the nature of the contract, and all other relevant factors present in the case.

Under the facts of the instant dispute, we believe the district court did not err in precluding Dr. Choren from presenting evidence with respect to the present value of future benefits or in refusing to alter or amend the judgment to include

an award of future benefits. Royal did not repudiate the contract in the instant case. While the jury found that Royal had acted in bad faith in handling and investigating Dr. Choren's claim, there was no evidence introduced at trial to suggest that Royal had brought suit under a "disingenuous pretense." See Viglas, 297 U.S. at 678. Rather, Royal sought to have adjudicated whether Dr. Choren's claims were encompassed by the contract's terms. Furthermore, we agree with the district court that the possibility of Dr. Choren's recovery, coupled with the legitimate expectations under the contract including payments for present disability (not future disability), militate against such an award. Thus, we hold that Colorado law would recognize a trial court's discretion to consider an award of future benefits. The district court exercised that discretion with careful reasoning. Having done so, the district court did not err in denying Dr. Choren's motion to alter or amend the judgment.

D. CCPA Claim

Dr. Choren's arguments on the CCPA are conditional on a remand on liability and damages. Because we do not find error that would necessitate a remand, we do not reach Dr. Choren's arguments.

Dr. Choren's motion to certify (to the Colorado Supreme Court) the question of whether the present value of potential future benefits is available if an

insurer denies benefits in bad faith is DENIED and the judgment is

AFFIRMED.