**F I L E D**

**UNITED STATES COURT OF APPEALS**

**June 29, 2005**

**TENTH CIRCUIT**

HORACE BARNES,

      Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

      Defendant-Appellee.

No. 04-3445

District of Kansas

(D.C. No. 01-CV-3202-KHV)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR, HARTZ**, and **McCONNELL**, Circuit Judges.

Plaintiff-Appellant Horace Barnes, a federal prisoner proceeding pro se,

appeals the district court's grant of the government's motion to dismiss and for

summary judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM

the district court's order in part and VACATE in part. Mr. Barnes also moves to

proceed in forma pauperis pursuant to 28 U.S.C. § 1915. That motion is

---

[*] After examining the briefs and appellate record, this panel has
determined unanimously that oral argument would not materially assist in the
determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).
This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors
the citation of orders and judgments; nevertheless, an order and judgment may be
cited under the terms and conditions of 10th Cir. R. 36.3.

GRANTED.  Mr. Barnes's motion for a temporary restraining order is DENIED.

I.

Mr. Barnes is an inmate at the United States Penitentiary in Leavenworth, Kansas ("USP Leavenworth").  Between August 15, 1997 and May 21, 1998, medical staff at USP Leavenworth treated Mr. Barnes approximately fifteen times for a rash and skin irritation on his penis.  On December 28, 1998, Mr. Barnes complained of skin irritation on his inner thigh, scrotum, and penis.  H. Al-Ruballe, a physician's assistant, diagnosed him with jock itch and prescribed Tolnaftate.  On January 27, 1999, Mr. Barnes complained of a penis infection.  Mr. Al-Ruballe diagnosed him with condylomata acuminata (genital warts), prescribed Podofilox, and treated him from an unlabelled bottle.  When Mr. Barnes returned the next day with complaints of swelling and soreness in the affected area, Mr. Al-Ruballe discontinued the Podofilox.  Mr. Al-Ruballe and Dr. Phillip Hill, the clinical director at USP Leavenworth, prescribed Sulfameth/Trimeth and Clotrimazole.  The swelling and soreness "quickly resolved itself because [Mr. Barnes] was never again given a Podo[f]ilox treatment from an unlabelled bottle."  Plaintiff's Objection to Motion for Summary Judgment, R. Doc. 27, at 28.

On May 22, 2000, Mr. Barnes filed an administrative tort claim with the Bureau of Prisons alleging that Mr. Al-Ruballe and Dr. Hill treated him

2

improperly on January 27 and 28, 1999. He sought $100,000 in damages. On October 19, 2000, the BOP denied Mr. Barnes's claim and informed him that he had six months to file suit in federal court. On April 19, 2001, Mr. Barnes filed a pro se complaint under the Federal Tort Claims Act, 28 U.S.C. § 2671, and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging negligent treatment by prison medical staff on several occasions from 1997 to 1999 and seeking $4 million in compensatory damages and $4 million in punitive damages. The district court dismissed the *Bivens* claim because Mr. Barnes did not allege a violation of his constitutional rights, and it substituted the United States as the sole defendant as required by the FTCA.

On September 24, 2002, the government filed a motion to dismiss or, alternatively, for summary judgment on the grounds that (1) the FTCA claim was time-barred; (2) except for the allegations of negligent medical care between January 26 and January 28, 1999, Mr. Barnes failed to exhaust his administrative remedies; (3) relief should be limited to the amount requested in the administrative claim; and (4) the evidence did not create a genuine issue of material fact on the FTCA claim. Mr. Barnes filed a motion for continuance of summary judgment, pursuant to Rule 56(f), seeking time to obtain affidavits and discovery to oppose summary judgment. After the government objected to the motion for failure to comply with Rule 56(f), Mr. Barnes filed a second Rule

3

56(f) motion, which sought an order that a photographer be allowed to enter USP Leavenworth to photograph his penis. The government objected to the second motion for failure to comply with Rule 56(f). On October 28, 2002, Mr. Barnes filed his response to the government's motion along with his own affidavit and exhibits. Mr. Barnes then filed a number of motions seeking to supplement his response to the government's motion for summary judgment, a motion for appointment of counsel, a motion for leave to serve interrogatories, a motion for physical examination, and a motion for preliminary injunction against BOP staff, who allegedly interfered with his efforts to pursue his claims. On September 30, 2003, the district court granted Mr. Barnes's motion to supplement, but it denied the motions for continuance, discovery, physical examination, appointment of counsel, and preliminary injunction. Mr. Barnes filed a renewed motion for a restraining order, which the district court summarily denied along with two pending motions to amend and supplement on July 9, 2004. On July 16, 2004, Mr. Barnes filed a motion for clarification of the court's order of July 9 denying his request for a temporary restraining order.

On September 27, 2004, the district court granted the government's motion to dismiss in part, holding that Mr. Barnes's complaint was not time-barred, but that he failed to exhaust his administrative remedies for all but two claims: (1) that Mr. Al-Ruballe negligently treated him with medicine from an unlabeled

4

bottle on January 27, 1999, and (2) that Mr. Al-Ruballe and Dr. Hill negligently prescribed Clotrimazole on January 28, 1999. The court granted the government's motion for summary judgment on the two exhausted claims. The court also denied Mr. Barnes's motion for clarification, explaining that it was a summary order, and to the extent he sought reconsideration, his request was denied because he failed to comply with local rules. Mr. Barnes filed a motion to reconsider, which the court denied.

We review the district court's dismissal for failure to exhaust administrative remedies de novo. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). We review the district court's grant of summary judgment de novo, viewing all the facts in the light most favorable to the plaintiff. *See Simms v. Okla. ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). We review the denial of a motion to reconsider for abuse of discretion. *Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1183 (10th Cir. 2005).

II.

*A. Dismissal for Failure to Exhaust Administrative Remedies*

On appeal, Mr. Barnes argues that the district court erred in dismissing all but two of his claims for failure to exhaust. The FTCA waives the federal government's sovereign immunity to suits for money damages arising out of the

5

negligence of government agents. *See* 28 U.S.C. 1346(b); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). As a condition of this waiver, however, the FTCA requires a claimant to exhaust administrative remedies before bringing a claim against the United States in federal court. 28 U.S.C. § 2675(a). To satisfy the exhaustion requirement, the claimant must file an administrative claim including "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Cizek v. United States*, 953 F.2d 1232, 1233 (10th Cir. 1992).

Mr. Barnes complied with the FTCA by filing an administrative claim with the BOP; however, his administrative complaint was limited to the following factual allegations:

> On January 26, 1999, I spoke to H. Al-Ruballe PA, about this problem I was having with my penis. Ruballe was full[y] aware of this . . . problem [in] 1997. Ruballe then treated the problem with (PODO[F]ILOX). The next day on January 27, 1999, I brought to his attention that my penis was swelling up around the head of my penis and the medication was beginning to burn me under my scrotum. On January 27, 1999, I wrote [an] inmate request form to Phillip Keith Hill, M.D. Chief Medical Officer, and Dr. Hill, refu[s]ed to acknowledg[e] my request form on January 28, 1999.
>  . . . Ruballe PA, ordered and recommended, Sulfameth 800/160 and (CLORIMAZOLE CREAM %). Karen Todd AHSA, used false information in inmate grievances BP-8, by mis-representation and conspiracy to cover-up the truth for H. Al-Ruballe, Staff Physician Assistant.

Doc. 20, Exh. A-2. The FTCA's exhaustion requirement is intended to provide notice to the agency so that it can investigate the claim. *See Estate of Trentadue*

*ex rel. Aguilar v. United States*, 397 F.3d 840, 852-53 (10th Cir. 2005).  Mr. Barnes's administrative complaint provided notice of his complaint only insofar as it arose from the events of January 26 to January 28, 1999.  With respect to claims arising from treatment on other dates, Mr. Barnes failed to exhaust his administrative remedies, and the district court properly granted the government's motion to dismiss.  To the extent Mr. Barnes's suit survives, his damage claim is limited to $100,000, the sum certain claimed in his administrative complaint.

B.  *Summary Judgment*

The district court granted the government's motion for summary judgment on Mr. Barnes's two remaining malpractice claims.  The FTCA provides for liability "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Because the relevant conduct occurred in Kansas, the claim is governed by Kansas law.  To state a prima facie case of medical malpractice in Kansas, a plaintiff must show that the defendant owed him a duty, that the defendant breached the duty, and that the defendant's breach of the duty caused the plaintiff's injury.  *See, e.g.*, *Sharples v. Roberts*, 816 P.2d 390, 397 (Kan. 1991).

*1. The Unlabeled Bottle*

Mr. Barnes alleges that on January 27, 1999, Mr. Al-Ruballe gave him

7

medicine from an unlabeled bottle. Mr. Al-Ruballe informed Mr. Barnes that the bottle contained Podofilox. After he received the medicine from the unlabeled bottle, Mr. Barnes experienced swelling and pain. Mr. Barnes alleges that he had received Podofilox in the past without any adverse reaction; therefore, something other than Podofilox must have been in the unmarked bottle.

The court concluded that if Mr. Barnes verified his factual allegations, a reasonable jury might conclude that Mr. Al-Ruballe breached the standard of care by giving him medicine from an unlabeled bottle. The court also concluded that, assuming Mr. Barnes could submit a verified statement, a reasonable jury could conclude that he was injured by taking the substance in the unlabeled bottle. The district court thus reduced the claim to one key fact question: What was in the unlabeled bottle? The district court held that the government was entitled to summary judgment because Mr. Barnes "has not shown what was in the bottle or that it was something other than Podofilox—what Al-Ruballe intended to use and what plaintiff had received in the past with no adverse reaction." *Id.* at 15-16. Accordingly, the court concluded that even if Mr. Barnes submitted a verified complaint, "[n]o reasonable jury could find that plaintiff was injured because the bottle was not labeled." *Id* at 16.

The district court's legal conclusion was erroneous. It is true that Mr. Barnes did not show exactly what was in the bottle. He alleged, however, that

8

after he was treated with the medicine in the unlabeled bottle, he suffered an adverse reaction. He also alleges that he had used Podofilox in the past with no adverse reaction. Submitted in proper form, his allegation that he suffered an adverse reaction to the medicine in the unlabeled bottle raises a genuine question of material fact, namely, whether the bottle really contained Podofilox. If the bottle contained something other than Podofilox, the lack of a label contributed to the alleged injury because it prevented Mr. Al-Ruballe from realizing that he was giving Mr. Barnes the wrong medicine. A reasonable jury could therefore conclude that Mr. Al-Ruballe's negligence injured Mr. Barnes.

Because the district court did not rely on Mr. Barnes's failure to submit verified statements, we hesitate to affirm on this alternative ground. As the district court noted, verification would have been sufficient to remedy the defects in Mr. Barnes's summary judgment proof. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("The plaintiff's complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury."). We have cautioned that "district courts must take care to insure that pro se litigants are provided with proper notice regarding the complex procedural issues involved in summary judgment proceedings." *Id.*

On the other hand, it appears that Mr. Barnes was on notice that his proof

9

was defective. The district court's order granting summary judgment noted that his unsworn statement was insufficient to survive summary judgment. Mr. Barnes did not submit a sworn statement with his motion for reconsideration.

Nevertheless, the district court's order suggests an inclination to overlook formal defects for purposes of summary judgment. In considering Mr. Barnes's letters from Bayer and the FDA, the court stated that "[a]lthough the statements are not properly authenticated, plaintiff could likely obtain such authentication before trial." Mem. & Order, R. Doc. 81, at 16. The court's forbearance seems appropriate in light of Mr. Barnes's tenuous grasp of summary judgment procedure and burdens of proof. *See* Aplt. Br. at 11A ("This Court's standard of review for cases dismissed by way of summary judgment pursuant to Rule 12(b) is de novo, for failure to state a claim, while in this case . . . the court below dismissed because Appellant did not 'prove' his case in the pleadings."); *see also* Mem. & Order (Motion to Reconsider), R. Doc. 85, at 3.

The district court's erroneous legal conclusion was based on the heuristic assumption that Mr. Barnes could produce an admissible statement of his factual allegations. Whether the district court meant to excuse Mr. Barnes's failure to do so is not clear from the order granting summary judgment. The decision to permit Mr. Barnes to remedy the defects in his evidence before trial is within the discretion of the district court. We therefore vacate the district court's order in

10

part and remand for consideration of this issue.

*2. Prescription of Clotrimazole*

Mr. Barnes also claims that on January 28, 1999, BOP medical staff negligently prescribed Clotrimazole to treat condylomata (genital warts). Mr. Barnes presented letters from Bayer Corporation and the Food and Drug Administration demonstrating that Clotrimazole is not indicated for the treatment of condylomata. The letters were not authenticated, but the district court stated that Mr. Barnes could likely authenticate them before trial; therefore a reasonable jury could find that Mr. Al-Ruballe and Dr. Hill breached the standard of care by prescribing Clotrimazole. *Id.* The court granted summary judgment, however, because "[a]bsent expert testimony, plaintiff cannot show that the prescription of Clotrimazole on January 28, 1999 caused any of his injuries." *Id.*

On appeal, Mr. Barnes attributes his failure of proof to BOP staff's interference with his legal mail, which allegedly prevented him from communicating with potential outside counsel and experts. He alleges that the prison mail room refused to return documents that he sent to certain outside parties and that this interference discouraged outside assistance. In support of this argument, he submitted two letters from Karen Russo of The Wirken Law Group. The first, dated May 20, 2003, indicates that Ms. Russo returned files to Mr. Barnes and received a return receipt, but the files were sent back without

11

explanation. In the second letter, dated June 5, 2003, Ms. Russo referred to the first letter and again informed Mr. Barnes that she had tried to return his files. She stated that Mr. Barnes had "failed to provide us with either a correct address for you; or made the necessary arrangements at the prison to accept your legal documents." Renewed Application for Restraining Order, Rec. Doc. 68, Exh. 2, Doc. C. He also submitted two Inmate Personal Property Records, dated May 23, 2003 and June 17, 2003, which show that he possessed 32 inches and 10 inches of legal material, respectively. Aplt. Br. Exh. 1.

Mr. Barnes does not provide any details of his efforts to secure expert testimony, nor does he explain how the prison's alleged interference with his mail frustrated these efforts. For example, he does not provide any specific information about the legal documents, mentioned in Ms. Russo's letters, that prison officials returned to the Wirken Law Group. The March 11, 1999 letter from Bayer Corporation and the November 1, 2001 letter from the FDA indicate that he had the ability to communicate with outside parties. Because Mr. Barnes failed to present competent evidence of causation, the district court did not err in granting summary judgment on this claim. Because he has not indicated how the prison's alleged interference with his mail prevented him from securing an expert witness, the court did not abuse its discretion in denying his motion for reconsideration.

III.

On June 6, 2005, Mr. Barnes filed a motion for a temporary restraining order against the BOP to prevent his transfer to a prison other than USP Leavenworth. Mr. Barnes argues that transfer to another prison would violate his right to pursue his claims in violation of due process, the First Amendment, and Appellate Rule 23(a). We see no basis for a temporary restraining order, and we DENY the motion.

The Federal Rules of Appellate Procedure do not provide Mr. Barnes with a right to relief. Rule 23(a) restricts a custodian's ability to transfer a prisoner during the appeal of a habeas corpus petition. Fed. R. App. P. 23(a). Mr. Barnes has not filed a habeas petition; he filed a complaint under the FTCA. Rule 23(a) therefore does not restrict the BOP's ability to transfer him during his appeal.

Nor can Mr. Barnes establish a right to a temporary restraining order on other grounds. Among other things, a temporary restraining order requires that "it clearly appear[] from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury . . . will result to the applicant." Fed. R. Civ. P. 65(b). Mr. Barnes maintains that transfer out of USP Leavenworth will result in the dismissal of his suit for lack of jurisdiction. Application for TRO at 2 ("[T]ransfer out of the jurisdiction of this Court or the court below will violate Appellant's right to bring suit . . . within the area and

13

district where the mal-practice took place" and "cause the dismissal of the lawsuit as Appellant would not be within the jurisdiction."). This fear is unfounded. By filing his complaint and his notice of appeal, Mr. Barnes has properly invoked the jurisdiction of the district court and of this Court, respectively. His absence from the State of Kansas or any other state in the Tenth Circuit does not divest this Court of jurisdiction. Because Mr. Barnes has not provided specific facts showing an imminent and irreparable injury, we deny his motion for a temporary restraining order.

IV.

For the reasons stated above, we AFFIRM the district court's grant of summary judgment in part, VACATE in part, and REMAND for proceedings consistent with this order. The motion for a temporary restraining order is DENIED. Mr. Barnes's motion to proceed in forma pauperis is GRANTED, but we remind Mr. Barnes that he must continue to make partial payments of his filing fee.

Entered for the Court,


Michael W. McConnell
Circuit Judge

14