FILED
United States Court of Appeals
Tenth Circuit

August 9, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TIMOTHY S. THERRIEN,

       Plaintiff - Appellee/
Cross - Appellant,

    v.

TARGET CORPORATION, a
Minnesota corporation,

       Defendant - Appellant/
Cross - Appellee.

Nos. 09-5047, 09-5064

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. NO. 4:06-CV-00217-JHP-FHM)**

Philip R. Richards (Jason T. Seay and Thomas D. Hird, with him on the briefs),
Richards & Connor, PLLP, Tulsa, Oklahoma, for Defendant - Appellant/Cross -
Appellee.

Paul DeMuro (J. Michael Medina, with him on the briefs), Frederic Dorwat,
Lawyers, Tulsa, Oklahoma, for Plaintiff - Appellee/Cross - Appellant.

Before **HARTZ**, **HOLLOWAY**, and **GORSUCH**, Circuit Judges.

**HARTZ**, Circuit Judge.

Timothy Therrien was stabbed when he tried to help apprehend a shoplifter at a Target store. He sued Target Corporation for negligently causing his injuries. After trial in the United States District Court for the Northern District of Oklahoma, the jury awarded Mr. Therrien $500,000 in damages.

Target appeals, contending that (1) there was insufficient evidence to support the verdict, (2) the district court gave incorrect jury instructions, (3) the court erred in ruling on the admissibility of certain evidence, and (4) the court should have granted remittitur or a new trial. Mr. Therrien cross-appeals the court's refusal to submit punitive damages to the jury. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.    BACKGROUND

### A.    The Stabbing

On June 3, 2005, Stacie Pavey was the lone security guard patrolling a Target store in Tulsa, Oklahoma (the Tulsa Store). After observing a man conceal some merchandise, Pavey decided that he was a shoplifter and planned to apprehend him. Pavey did not call for assistance. He waited until the suspect reached the exit vestibule (the space between the two sets of exit doors), ran to the suspect from behind, and, without identifying himself, put his hand on the suspect's arm. A struggle ensued as the suspect tried to flee.

Mr. Therrien was shopping in the store. He saw what was happening and quickly went to the vestibule. The parties dispute what happened next.

Mr. Therrien testified that on reaching the vestibule, "I stood there for a couple of seconds . . . and Mr. Pavey looked at me, I looked at him, and he said, 'I'm store security. Please help me.'" Aplt. App., Vol. III at 601. Pavey denied asking for Mr. Therrien's help and testified that he had told Mr. Therrien to "back away." *Id.*, Vol. IV at 788.

Whatever passed between the two men, Mr. Therrien jumped into the fray. He tried to restrain the suspect, who pulled out a knife and tried to stab Mr. Therrien. Despite pleas from Pavey to let the suspect go, Mr. Therrien held onto him. When the suspect stopped struggling, Mr. Therrien relaxed his grip; the suspect immediately spun around, stabbed Mr. Therrien in the abdomen, and ran away. The vestibule episode—from the time Pavey confronted the suspect to the escape—lasted less than 20 seconds.

Shoplifting is not a rarity at Target stores. Pavey testified that "[t]here was a consistent level of criminal activity at [the Tulsa] store" and he made apprehensions "quite frequently." *Id.*, Vol. III at 693. Also, there were occasional violent incidents at the store. Pavey had seen assaults, purse-snatchings, and robberies. Julie Plonczynski, the Tulsa Store's chief of security personnel, testified that two shoplifters, in separate incidents, had tried to use weapons to escape apprehension—one by pulling a knife and one by spraying mace. On at least one occasion a customer had become involved in an apprehension. Pavey testified that less than three months before the Therrien

episode, a customer had tried to help Pavey by grabbing a shoplifting suspect in the store parking lot.

Target had established policies for dealing with suspected shoplifters. One manual said:

> It is always advisable to intervene as a team of two or more unless the situation dictates or demands solo intervention. If you are alone on a unit and an individual breaks a glass and threatens suicide, you may feel it is, in your best professional judgment, a wise decision not to leave the scene to obtain assistance. Under all other circumstances, it is best to intervene as a team.

*Id.*, Vol. V at 1320. The manual explains that a team effort is "much safer for all involved," and solo apprehensions tend to "precipitate a confrontive atmosphere." *Id.* The manual also directs security guards to approach the shoplifter from the "front and slightly to the side," *id.* at 1245, and to identify themselves as Target security personnel. Guards are further advised to give the suspect a chance to cooperate and return to the store before touching or grabbing him. As Plonczynski testified at trial, these policies are meant to keep apprehensions as "low-key and nonviolent as possible." *Id.*, Vol. IV at 858. When asked about Pavey's being the only security officer on duty at the time of Mr. Therrien's injury, she said that she was understaffed; although the Tulsa Store had budgeted security guards for 120 hours a week, it was staffed for only 80 hours a week.

There was evidence that Target encouraged security guards to make apprehensions. Pavey's performance review on August 11, 2004, stated that

Pavey "need[s] to increase [his] External apprehensions." *Id.*, Vol. V at 1239.

And he testified that "it was [his] perception, that Target had a quota of a certain

number of apprehensions that [he] had to make in order to get a good score on

[his] review." *Id.*, Vol. III at 694. Although Plonczynski testified that Target

used no quotas, she said that the level of apprehensions "was definitely a

measurement of performance which is why it's named the key performance

measure." *Id.*, Vol. IV at 873.

**B.    Procedural History**

Mr. Therrien brought a negligence suit against Target in Oklahoma state

court on March 28, 2006. Target removed the case to federal district court. *See*

28 U.S.C. §§ 1332(a)(1) (diversity jurisdiction), 1441(a) (removal). On June 1,

2006, the district court granted Target's motion to dismiss on the ground that it

had no duty to protect invitees from criminal acts by third persons. But we

reversed on appeal. *See Therrien v. Target Corp.*, 216 F. App'x 751 (10th Cir.

2007). The case was then tried to a jury on two occasions. After Mr. Therrien

rested at the first trial, the court granted Target's motion for judgment as a matter

of law under Fed. R. Civ. P. 50(a), explaining that Oklahoma law had not

recognized a duty on business owners to take reasonable precautions against

third-party criminal conduct, unless "the situation involved an immediate event

which the proprietor knew was occurring or about to occur." Aplt. App., Vol. II

at 362. It said that Oklahoma courts had not followed the rule stated in

Restatement (Second) of Torts § 344 cmt. f (Restatement) that prior incidents and experience can give rise to a duty.

Less than a week after the court's ruling, however, the Oklahoma Supreme Court decided *Bray v. St. John Health System, Inc.*, 187 P.3d 721 (Okla. 2008), which adopted Restatement § 344 cmt. f. Bray was kidnapped in a hospital parking garage and raped. *See id.* at 723. She sued the hospital for negligence. *See id.* At the hearing on the hospital's summary-judgment motion, the trial court rejected Bray's argument that past criminal activity in the parking garage gave rise to a duty on the hospital to take reasonable precautions. *See id.* The state supreme court reversed and remanded for further proceedings to determine whether the hospital had taken adequate precautions. *See id.* at 725. It endorsed the following statement from § 344 cmt. f:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

*Id.* at 724 n.2; *see id.* at 723–24 (adopting the entirety of comment f).

Citing to *Bray*, Mr. Therrien moved for a new trial under Fed. R. Civ. P. 59(a), and the district court granted the motion. At the second trial Mr. Therrien began with two theories of liability—negligence and the rescue doctrine; but after both sides rested, he withdrew his rescue-doctrine claim. The jury found Target negligent and awarded Mr. Therrien $500,000 in damages. The jury, which was instructed on comparative negligence, also found that Mr. Therrien was not negligent.

Target appeals, arguing (1) that there was insufficient evidence of negligence, (2) that the jury was not correctly instructed on the elements of negligence, (3) that the jury should have been instructed on assumption of the risk, (4) that evidence of past incidents in the Tulsa Store and Target's security policies should have been excluded, (5) that it should have been permitted to introduce evidence of Mr. Therrien's psychological history and prior bad acts, and (6) that it should have been granted remittitur or, alternatively, a new trial. Mr. Therrien cross-appeals, contending that the district court should have submitted the issue of punitive damages to the jury.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

Target claims that there was insufficient evidence that it had been negligent. Our standard of review reflects our system's profound respect for fact-finding by a jury of citizens:

> When a jury verdict is challenged on appeal, our review is limited to determining whether the record—viewed in the light most favorable to the prevailing party—contains substantial evidence to support the jury's decision. Substantial evidence is something less than the weight of the evidence, and is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if different conclusions also might be supported by the evidence.

*Bangert Bros. Constr. Co. v. Kiewit W. Co.*, 310 F.3d 1278, 1292 (10th Cir. 2002) (citation and internal quotation marks omitted). Additionally, because this is a case arising under diversity jurisdiction, we must evaluate the evidence in terms of the substantive law of the forum state, Oklahoma. *See Bankers Trust Co. v. Lee Keeling & Assocs., Inc.*, 20 F.3d 1092, 1099 (10th Cir. 1994) (in diversity cases, "federal law provides the procedural measure of the sufficiency of the evidence, [and] state law on negligence provides the substantive measure." (brackets and internal quotation marks omitted)).

Mr. Therrien's theory of Target's liability has been straightforward: In part because Target had devoted inadequate resources to store security, and in part because of Pavey's own poor judgment, Pavey dealt with the suspected shoplifter in a negligent manner that endangered store customers.[1] In particular, in light of the potential danger to customers that can arise from attempts to apprehend suspected shoplifters, (1) Target had an inadequate number of security personnel at the store; (2) Target should not have evaluated security guards based on the

---

[1]As the jury was instructed, Target is responsible for the acts or omissions of its employees within the scope of their employment.

number of apprehensions, because that pressured them to make apprehensions even when it was not safe to do so; (3) Pavey should not have attempted to apprehend the suspect without obtaining assistance from other security personnel; (4) he should have confronted the suspect face-to-face, identifying himself as a security officer, rather than approaching him from behind; (5) he should have given the suspect an opportunity to return to the store before placing his hand on the suspect; (6) he should have released the suspect when he was losing control; and (7) he should have kept the apprehension low-key.

According to Mr. Therrien's theory, the above negligence created a dangerous situation—a potentially armed suspect struggling with a security officer within the store—and a foreseeable consequence of this situation was that a customer would try to assist Pavey, particularly after Pavey called for help. In short, Target's negligence led to the knifing. Indeed, Plonczynski, Pavey's supervisor, noted in a performance review that Pavey's actions had "caused" Mr. Therrien's injury. Aplt. App., Vol. V at 1336.

This theory is supported by Jury Instruction No. 10 (which has not been challenged on appeal): "Plaintiff alleges Target was negligent in the manner in which it responded to a known criminal on its premises and that Target was negligent in its failure to prevent his injury." *Id.* at 1113. The theory is also consistent with Jury Instruction No. 11, which elaborates on the duty of owners of business premises:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or
(b) give a warning adequate to enable visitors to avoid the harm, or otherwise to protect them against it.

Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonabl[y] anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of employees to afford a reasonable protection.

*Id.* at 1114.

In arguing that the evidence at trial was insufficient to establish its liability, Target focuses on the struggle in the vestibule. It contends (1) that the danger arising from the struggle between Pavey and the suspect would be apparent to any reasonable person, so it had no duty to warn Mr. Therrien to stay away or otherwise protect him from the danger; and (2) anyway, the events in the vestibule happened so quickly that Target could not have taken any steps to protect

-10-

Mr. Therrien.[2]  But Target's focus on the struggle in the vestibule misses the point

of Mr. Therrien's case.  Mr. Therrien alleges a breach of duty in the conduct that

*created* the disorder in the vestibule—Target's failure to provide adequate security

resources and Pavey's negligent handling of the shoplifting suspect.  Target does

not challenge on appeal the proposition that there would have been no vestibule

disorder had it provided more security personnel or had Pavey properly dealt with

the suspect.

Target's arguments might be appropriate if it were not responsible for the

struggle between Pavey and the suspect.  But if Target was responsible, the proper

analysis then is whether it should escape liability because an intervening cause

(say, Mr. Therrien's entry into the fray) suspended its own negligence.[3]  The

---

[2]Although Target's district-court motion under Fed. R. Civ. P. 50(b) and its
appellate brief argue that it had no duty to Mr. Therrien because the danger to him
was apparent, neither of its two preverdict motions for judgment under Fed. R.
Civ. P. 50(a) mentioned apparent danger.  Ordinarily a party cannot raise in a
Rule 50(b) motion an argument not already raised in its Rule 50(a) motion.  *See*
*M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009); 9B
Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2537,
at 606 (3d ed. 2008) ("Since the post-submission motion is nothing more than a
renewal of the earlier motion made at the close of the presentation of the
evidence, the case law makes it quite clear that the movant cannot assert a ground
that was not included in the earlier motion.").  But on appeal we can consider
such an argument when the opposing party failed to object to the Rule 50(b)
motion for raising new arguments.  *See Elliot v. Turner Constr. Co.*, 381 F.3d
995, 1006 (10th Cir. 2004); Wright & Miller, *supra* § 2537, at 606–16.  Mr.
Therrien did not raise this objection at trial.

[3](the Restatement) Alternatively, Target might argue that Mr. Therrien
assumed the risk of injury when he joined the fray.  *See Byford v. Town of Asher*,
(continued...)

standard for determining whether there was an intervening cause was established

by unchallenged Jury Instruction No. 17, which stated:

> An intervening cause is one that interrupts or breaks the connection between a defendant's act or omission and a plaintiff's injury. Defendant's act or omission would not be the direct cause of Plaintiff's injury if another event intervened between the two and that event was:
> 1. Independent of Defendant's act or omission;
> 2. Adequate by itself to cause Plaintiff's injury; and
> 3. *Not reasonably foreseeable by Defendant*.

*Id.*, Vol. V at 1120 (emphasis added).

On the facts of this case, the jury could rationally find that a customer's

decision to enter the fray was not an intervening cause because it was "reasonably

foreseeable." *Id.* Not only is it a natural human instinct to help others in

difficulty (even when rendering aid is foolish), but the jury could have believed

Mr. Therrien's testimony that Pavey called for assistance. Accordingly, the jury

could properly find that Mr. Therrien's injury was proximately caused by Target's

negligence. This is not to say that the obviousness of the danger to Mr. Therrien

was irrelevant. That obviousness could have persuaded the jury that

Mr. Therrien's actions were negligent, thereby reducing Target's liability through

principles of comparative fault. But Target would still be partially liable; and in

any event, the jury decided that Mr. Therrien was not negligent.

---

[3](...continued)
874 P.2d 45, 49 (Okla. 1994) (assumption of the risk is an absolute bar to recovery). But in its sufficiency-of-the-evidence argument, Target has not raised this defense and we therefore do not consider it.

In its reply brief Target additionally argues that the evidence of its experience with shoplifters was insufficient to create a duty because no prior episode at the Tulsa Store involved a shoplifter's use of a knife to avoid apprehension by a customer.  This argument probably comes too late.  *See City of Colorado Springs v. Solis*, 589 F.3d 1121, 1135 n.5 (10th Cir. 2009) (arguments raised only in reply brief are waived).  Moreover, we believe that the jury could have reasonably found that Target, based on experience at the Tulsa Store and elsewhere, was sufficiently aware of the danger to customers that could arise in the apprehension of suspected shoplifters, that its actions (including Pavey's) were unreasonable.

Because there was sufficient evidence that Target's negligence caused Mr. Therrien's injury, we affirm on this issue.

## B.     Jury Instructions

Target complains (1) that the premises-liability instructions should have stated that Target had no duty to warn or protect Mr. Therrien from apparent dangers and that it is not liable if there was no time to warn or protect him; and (2) that the jury should have been instructed on assumption of the risk.  We reject both complaints.

### 1.     Premises Liability

Target contends that Jury Instruction Nos. 11 and 13[4] "fail to accurately and fully apprise the jury of the well-established Oklahoma law regarding premises security liability."  Aplt. Br. at 23.  The problem, as Target sees it, is that these instructions did not say (1) that Target owed no duty to warn or protect customers from apparent dangers, and (2) that it could be liable only if there was enough time to warn Mr. Therrien or to protect him.  These arguments, however, were not preserved for appeal.

During the jury-instruction conference, the colloquy on Instruction No. 11 was brief:

THE COURT:  No. 11 is premises liability.

[Mr. Therrien's counsel]:  No objection.

[Target's counsel]:  Your Honor, on behalf of Target, I do object to this requested instruction.  I think it's adequately covered by the instruction on the elements of negligence, and giving the jury the jurisprudential

---

[4]Instruction No. 13 stated:
     The plaintiff has the burden of proving each of the following essential elements of his negligence cause of action against the defendant:
          1. That the defendant was negligent in one or more of the ways claimed by plaintiff; AND
          2. That the plaintiff was injured and sustained damages; AND
          3. That the negligence of the defendant caused the injuries and damages to the plaintiff.
     The defendant has the burden of proving its defense that the contributory negligence of the plaintiff caused or contributed to plaintiff's injuries.

Aplt. App., Vol. V at 1116.

-14-

background of this type of cause of action I think is probably more confusing than helpful. For that reason, I think it's more than they need.

Also, we've offered some—or proffered some alternative instructions on premises liability that we think accurately states the law.

THE COURT: Anything further from plaintiff on No. 11?

[Mr. Therrien's counsel]: I incorporate my arguments that I made in response to the Rule 50 motion, Your Honor.

THE COURT: [Target's] objection noted; overruled as to 11.

Aplt. App., Vol. IV at 1012–13. Target did not object to Instruction No. 13.

To preserve a challenge to a jury instruction, "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). That is, the objection must "proffer the same grounds raised on appeal with sufficient clarity to render the grounds obvious, plain, or unmistakable." *Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1179 (10th Cir. 2005) (citation and internal quotation marks omitted).

Target's objection fell far short of that standard with respect to its appellate challenges. The objection to Instruction No. 11 never mentioned apparent danger. Rather than saying that the instruction omitted important elements, counsel told the district court that the subject matter was "adequately covered by the instruction on the elements of negligence" and that the elaboration in the instruction was "probably more confusing than helpful." Aplt. App., Vol. IV at 1012. Target's

-15-

counsel referred to other instructions that he was submitting, stating: "Also, we've offered some—or proffered some alternative instructions on premises liability that we think accurately states the law." *Id.* But he did not claim that those proffered instructions were accurate in some respect that Instruction No. 11 was not; he made no attempt to explain that they would cure some error in Instruction No. 11, much less specify an alleged error. District judges are not required to be mind readers. This argument was not properly preserved.

To the extent that Target may wish to appeal the district court's refusal to give its requested instructions, we decline to consider the issue. Target's opening brief mentions the rejected instructions (40, 41, and 42) only once, and in a footnote at that: "Target's requested instructions, Aplt. App. at 576-77, 584-85 [pages of the record where the requested instructions appear], which the district court refused to give, would have instructed the jury as to these legal criteria [relating to apparent danger] to a finding of premises security liability under Oklahoma law." Aplt. Br. at 23 n.4. Because Target mentions the court's rejection "only in passing" and "does not present any argument to specifically challenge" the alleged error, it waived any argument that the court improperly denied the requested instructions. *Kabba v. Mukasey*, 530 F.3d 1239, 1248 (10th Cir. 2008) (failure to raise an argument sufficiently in the opening brief waives that argument). "Many courts have . . . held that an argument made only in a footnote of an appellate brief is waived." Gregory A. Castanias & Robert H.

-16-

Klonoff, Federal Appellate Practice and Procedure in a Nutshell 48 (2008).  But we need not rely on such a broad rule.  Here the footnote does not even contain an argument.  We further note that Target's reply brief also frames the contention in terms of error in Instruction No. 11; it does not argue that rejection of Target's proffered instructions was error.  Finally, neither the opening brief's text nor the footnote points to any place in the record where Target preserved an objection to the failure to give the instructions.  This circuit's local rule states that "[b]riefs must cite the precise reference in the record where a required objection was made and ruled on, if the appeal is based on:  . . . (b) the giving of or refusal to give a particular jury instruction . . . ."  10th Cir. Rule 28.2(C)(3).

Target also failed to preserve for appeal its contention that the instructions should have stated that business owners are not liable if they had no time to warn or protect the visitor.  Its briefs give no record cite of any trial objection made on this ground.  *See id.*  And Target's reply brief does not dispute the contention in Mr. Therrien's answer brief that this argument was raised for the first time on appeal.

Target suggests that even if it did not preserve its arguments below, it should prevail on plain-error review.  *See United States v. Baum*, 555 F.3d 1129, 1135 (10th Cir. 2009) (unpreserved issues are reviewed for plain error).  We disagree.

-17-

To obtain reversal on plain-error review, the appellant must satisfy a four-prong test. It must show "(1) an error (2) that is plain, meaning clear or obvious under current law, and (3) affecting substantial rights. If these elements are satisfied, we may exercise discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Royal Maccabees*, 393 F.3d at 1180 (brackets, citation, and internal quotation marks omitted). Target's first alleged plain error is that the district court's premises-liability instructions did not restrict liability to hidden dangers; in other words, the instructions inappropriately permitted the jury to find liability even if the danger was apparent. But even if the instructions were erroneous in that respect, they were not plainly so. Oklahoma law is far from clear on the point. Indeed, on the prior appeal in this case we wrote: "Oklahoma's premises liability cases involving criminal attacks focus on the invitor's knowledge of criminal activity; they do not appear to incorporate the 'open and obvious danger' analysis found in physical-defects cases." *Therrien*, 216 F. App'x at 753–54. Target has not pointed to clarification of the matter in more recent Oklahoma opinions. This plain-error claim fails on the second prong.

As for Target's argument that the jury should have been instructed that Target would not be liable unless it had time to warn or protect Mr. Therrien, we fail to see how Target's substantial rights were injured by the absence of such an instruction. Mr. Therrien's claim was based on negligence—the failure to exercise

-18-

due care. We doubt that the jury would have found Target negligent for failure to do the impossible. This plain-error claim fails on the third prong.

### 2. Assumption of the Risk

Target contends that the district court erred by not giving the jury an instruction on the defense of assumption of the risk. In its opening brief it summarizes its argument as follows: "In light of [1] Therrien's dismissal of his rescue doctrine claim, and [2] the evidence presented at trial that Therrien was highly experienced in premises security matters and is an experienced martial arts fighter, the jury should have been given the opportunity to consider [the assumption-of-the-risk defense]." Aplt. Br. at 25. Again, however, Target has failed to show that it raised these two grounds in district court. As we have previously stated, the appellant "must cite the precise reference in the record where a required objection was made and ruled on," 10th Cir. Rule 28.2(C)(3), and the objection below must "proffer the same grounds raised on appeal with sufficient clarity to render the grounds obvious, plain, or unmistakable," *Royal Maccabees*, 393 F.3d at 1179. But the only record citations in Target's brief on the matter are to pretrial proceedings, before Mr. Therrien dismissed his rescue-doctrine claim and before the evidence of his security and martial-arts experience was admitted at trial, so neither of the two grounds for Target's argument on appeal could possibly have been raised at those record citations.

Although we have no obligation to consider Target's argument further, we provide additional detail to establish that Target could not have prevailed simply by adding additional record cites in its brief. This detail confirms that Target did not alert the district court to the grounds raised on appeal.

Before trial Mr. Therrien filed a motion in limine to preclude Target from arguing that he had assumed the risks of injury by participating in the struggle. In an order entered the week before trial, the district court definitively ruled on the motion, stating that it would be granted with respect to both Mr. Therrien's rescue-doctrine claim and his premises-liability claim under the Oklahoma Supreme Court's recent *Bray* decision. It explained:

> The facts of this case do not establish Plaintiff voluntarily consented to being exposed to a danger that he knew and appreciated. While there remains a question of fact as to whether Plaintiff voluntarily entered the fr[a]y, there is no question the shoplifter's possession of a weapon was unknown to Plaintiff.

Aplt. App., Vol. III at 555 (citation and internal quotation marks omitted). Target has not challenged this order.

At the jury-instruction conference, Target reiterated its pretrial request for an instruction on assumption of the risk, but its statement was perfunctory. The only reason it offered was that "we believe that this case does present an appropriate case for assumption of the risk." *Id.*, Vol. IV at 1026. It did not explain why the pretrial order no longer made sense in light of Mr. Therrien's dropping his rescue-doctrine claim or the evidence presented at trial.

-20-

When developments during trial potentially affect the continuing propriety of an order, the party opposing the order has the "responsibility to ask the court to reconsider its earlier decision in light of the new evidence"; failure to do so precludes the party from relying on appeal on the new evidence. *See Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1278 (10th Cir. 2003). We do not impose on the trial court the burden to construct a party's arguments for revisiting its prior rulings. Because Target's request for the district court to reconsider its pretrial order did not mention the abandonment of the rescue-doctrine claim or the trial evidence of Mr. Therrien's background in security, we decline to consider its argument on those grounds.

## C. Evidentiary Rulings

Before trial Target filed a motion in limine to exclude evidence of prior incidents at the Tulsa Store and its security policies. The district court denied the motion except as to a few episodes. Also, the court granted Mr. Therrien's motion in limine to exclude evidence of his psychological history and prior bad acts. On appeal Target challenges these rulings.

In diversity cases, federal law generally governs the admissibility of unprivileged evidence. *See Blanke v. Alexander*, 152 F.3d 1224, 1231 (10th Cir. 1998). We review a district court's evidentiary rulings for abuse of discretion. *See Elliot v. Turner Constr. Co.*, 381 F.3d 995, 1003 (10th Cir. 2004). Under this standard we reverse only if the district court "made a clear error of judgment . . .

and the complaining party's rights were adversely affected." *Id.* (internal quotation marks omitted).

### 1.    Past Incidents at Target

At trial, Pavey and Plonczynski testified that assaults, purse-snatchings, and robberies had occurred in the Tulsa Store before Mr. Therrien's stabbing. Both also mentioned "other crimes" at the store but gave no details. Aplt. App., Vol. III at 693. Pavey said that there was a "consistent level of criminal activity" in the store. *Id.* In addition, he recounted an attempted apprehension in March 2005 during which he had chased a suspected shoplifter into the parking lot, where a customer tried to help Pavey by grabbing the suspect. Plonczynski testified to the following incidents at the Tulsa Store: (1) a suspected shoplifter attempted to cut himself with a knife outside the store during a domestic dispute; and (2) on two separate occasions suspected shoplifters brandished weapons (a knife and mace) at a Target security guard to avoid apprehension.

Target contends that these incidents were irrelevant because they were "not sufficiently similar such that Target should have reasonably foreseen that a shoplifter would brandish a knife and stab a patron who voluntarily intervened in the attempted apprehension of the shoplifter." Aplt. Br. at 37–38. The evidence, it argues, was "clearly prejudicial," *id.* at 37, and the prejudice "outweighed any semblance of relevance," *id.* at 38. We are not persuaded.

Under Fed. R. Evid. 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Oklahoma law charges business owners with the duty to take precautions if "the place or character of [the] business, or [the owner's] past experience" indicates that third-party criminal conduct is reasonably likely. *Bray*, 187 P.3d at 724 n.2. Thus, a matter of consequence in this case was whether experience alerted Target to the possibility of criminal conduct that may endanger its customers. Evidence that shoplifters can be violent, that they may carry weapons, and that customers may get involved in apprehending shoplifters, all could suggest to a reasonable person that the apprehension of shoplifters should be conducted carefully to minimize the risks to customers.

Of course, not all relevant evidence is admissible. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. "Evidence is not unfairly prejudicial," however, "simply because it is damaging to an opponent's case. To be *unfairly* prejudicial, the evidence must have an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (citation and internal quotation marks omitted). Target does not explain how it was unfairly prejudiced by admission of past incidents in its store. It is not clear to us why the jury would

have thought less of Target simply because third parties committed crimes on its premises.  For example, even if there is little probative value to the evidence that a suspected shoplifter attempted to cut himself with a knife, the evidence was hardly likely to inflame passions against Target.  Target's real concern appears to be that the jury might give the evidence more weight than Target believed it deserved.  But the district court could reasonably find otherwise.  It was not necessary that the evidence concern incidents identical to the one in which Mr. Therrien was injured.  The court did not abuse its discretion in admitting this evidence.

### 2.     Target's Security Policies

At trial Mr. Therrien introduced evidence of Target's security policies, including recommended procedures for apprehending shoplifters.  Mr. Therrien also presented evidence that the botched apprehension did not conform to those procedures—for example, Pavey attempted the apprehension by himself, approached the suspect from behind, and placed his hand on the suspect before identifying himself as Target security.

Target contends that the policies should not have been admitted because they "are not relevant to define the standard of care," Aplt. Br. at 30, or to show that it had breached any duties and caused Mr. Therrien's injuries.  We disagree.  Although a company's internal policies "do not alter the applicable standard of care, they are admissible to show negligence," even if the policies demand a higher standard of care than the applicable law.  *Robinson v. Mo. Pac. R.R. Co.*, 16

F.3d 1083, 1091 (10th Cir. 1994). We have permitted admission of such policies

when the jury is instructed that they are "'not admitted as legal standards of duty,

but as evidence of the measure of caution which ought to be exercised in situations

to which the rules apply.'" *Id.* (quoting *Fulton v. St. Louis-San Francisco Ry. Co.*,

675 F.2d 1130, 1133 (10th Cir. 1982)). Here, Jury Instruction No. 18 properly

informed the jury how the policies could and could not be used:

> Any Target policies or procedures admitted into evidence are
> not admitted as legal standards or legal duties in this case. As such,
> the finding of a violation of policy or procedure should not be equated
> with a finding of negligence. Although Target's policies and
> procedures do not alter the negligence standard of care, they are
> admissible to show negligence.

Aplt. App., Vol. V at 1121.

Target argues that *Robinson* and *Fulton* are inapplicable because those cases

did not deal with premises liability. It fails to explain, however, why that

difference is material; and the materiality escapes us. In both circumstances a

company's policy is offered to inform the jury's decision on what precautions are

reasonable in light of the risk.

In addition, Target contends that admission of the policies was prejudicial,

asserting that Mr. Therrien used the policies to "impassion and inflame the jury by

arguing Target intentionally violates its policies and procedures on a regular

basis." Aplt. Br. at 34. But "[t]he jury's awareness that [a company] failed to

comply with its own rules is not the sort of prejudice the Federal Rules of

Evidence contemplate." *Fulton*, 675 F.2d at 1133. The district court did not abuse its discretion in admitting this evidence.

### 3. Mr. Therrien's Psychological History and Prior Bad Acts

The district court granted Mr. Therrien's motion in limine to exclude evidence that posttraumatic stress disorder or other mental illness caused him to act violently. It also excluded the following evidence of prior bad acts: (1) a 14-year-old felony conviction for marijuana possession; (2) two protective orders entered against Mr. Therrien in 1999, on behalf of his sister and brother-in-law; (3) a protective order entered against Mr. Therrien in 2004, on behalf of his ex-wife and issued in response to an assault allegation; (4) Mr. Therrien's 2007 no-contest plea to a charge of misdemeanor assault; and (5) two charges that he violated the 2004 protective order by attempting to speak to his son and calling his ex-wife.

Target argues that Mr. Therrien's run-ins with the law demonstrate a "propensity to act unreasonably and contrary to authority—precisely the circumstance of Therrien's conduct in relation to Target in this case." Aplt. Br. at 38–39. According to Target, the evidence would help the jury decide whether Pavey asked Mr. Therrien for help or told him to stay away, because it would "show that even if Therrien was told to stay away, his history of violence and mental illness would tend to establish that he would engage anyway." *Id.* at 39. It further argues that the evidence was relevant to Target's comparative-fault and

assumption-of-the-risk defenses. Target contends that the evidence is not impermissible character evidence because it was offered to show Mr. Therrien's "motive, intent, and knowledge in voluntarily injecting himself into the apprehension of the shoplifter." Aplt. Reply & Resp. to Cross-Appeal Br. at 26.

We are unpersuaded. The evidence that Target wished to offer was, at best, minimally probative of whether Mr. Therrien would act unreasonably in response to Pavey's struggle with the shoplifter. And if not character evidence offered to prove conduct in conformity with that character, the evidence was closely akin to it. Most importantly, the evidence could be unfairly prejudicial by causing the jury to reject Mr. Therrien's claim on the ground that he was a bad person. The district court did not abuse its discretion in excluding the evidence.

## D.    Remittitur

Target's final argument is that the district court erred in denying a motion for remittitur or, alternatively, a new trial. The $500,000 damages award, Target contends, is tainted by improper remarks in Mr. Therrien's closing argument and is not supported by the evidence. We reject both contentions.

In diversity actions, federal law governs the grant of motions for remittitur or a new trial. *See Blanke*, 152 F.3d at 1235–36.

> We review the district court's denial of [a] motion for remittitur or a new trial due to excessive damages under a highly deferential standard, reversing only if we can discern a manifest abuse of discretion. Under this standard, the jury's award is inviolate unless we find it so excessive that it shocks the judicial conscience and

-27-

raises an irresistible inference that passion, prejudice, corruption, or other improper cause invaded the trial.

*M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 766 (10th Cir. 2009) (citation and internal quotation marks omitted).

We begin with Mr. Therrien's closing argument. Target complains that the argument (1) "clearly and repetitively asked the jury to punish Target," Aplt. Br. at 48; (2) impermissibly asked the jury to put themselves in his position; and (3) mentioned Target's wealth and its expert's fees. Because Target concedes that it did not object to the remarks that it now challenges on appeal, we accept its position that plain-error review applies. As stated earlier, a party claiming plain error must show, among other things, that its substantive rights were affected. *See Royal Maccabees*, 393 F.3d at 1180. Target has not made that showing. Although some of the remarks may have been inappropriate, they were not so inflammatory as to have prejudiced Target.

We also hold that the jury award is supported by sufficient evidence. Because Mr. Therrien stipulated that he would not seek compensation for mental or psychological harm, the jury was instructed that it could not award "any damages or other compensation for emotional distress, mental injury or psychological harm as a result of this incident." Aplt. App., Vol. V at 1123. Instead, damages were limited to "the amount of money which will reasonably and fairly compensate [Mr. Therrien] for the following elements of damage proved by

-28-

the evidence to have resulted from, or be directly caused by, the negligence of the defendant": (1) past and future physical pain and suffering, (2) physical condition before and after the accident, (3) nature and extent of injuries, (4) disfigurement, (5) physical impairment, (6) reasonable expenses of necessary medical care, and (7) age. *Id.* at 1122.

Mr. Therrien presented evidence that his injuries included a spleen laceration, a stab wound through the abdominal wall, and a sprained shoulder. The knife wound was life-threatening and the extent of internal bleeding forced doctors to perform open surgery (as opposed to laparoscopic surgery, a less invasive procedure) to examine fully and repair the damage. Mr. Therrien was hospitalized for six days, though his recovery lasted much longer. He testified that in the six months following surgery, he remained mostly bed- and chair-ridden, and gained almost 100 pounds. It was not until the second year after surgery that he could engage in his normal activities. Mr. Therrien's medical expenses totaled $34,041.67.

The jury also heard evidence that Mr. Therrien's injuries caused him much pain. According to Mr. Therrien, in the first month after surgery he was in "very terrible, terrible pain" and had difficulty sleeping and walking. *Id.*, Vol. III at 629. His doctor testified that recovery from open surgery is slow and painful, because the operation involves cutting through muscles and nerves. In addition, the blood in his abdomen "cause[d] a large inflammatory response, and that's quite

painful." Cross-Aplt. Supp. App. at 103. During his recuperation Mr. Therrien's abdominal pain worsened and the problem was diagnosed as a chronic-pain syndrome, probably caused by scar tissue from the surgery. Mr. Therrien still experienced significant abdominal pain five months after the stabbing. By April 2006—nearly a year after the incident—his doctor characterized Mr. Therrien's pain as "static and stable. A lot of it he had gotten used to, to some extent." *Id.* at 107. Mr. Therrien testified: "I hurt every day. I have a dull, aching pain where the knife went into my spleen." Aplt. App., Vol. III at 635.

Considering Mr. Therrien's life-threatening injury, the invasive medical procedure needed to repair it, the pain he experienced, and his physical impairment during recovery, we cannot say that $500,000 is so excessive as to shock our conscience. To be sure, the jury award exceeds Mr. Therrien's medical expenses. But medical expenses are not the only measure of compensatory damages, which, as the jury was instructed, also account for factors such as the nature and extent of injury, physical impairment, and pain and suffering. We conclude that the district court did not abuse its discretion in denying Target's motion for remittitur or a new trial. *See Blanke*, 152 F.3d at 1228, 1236 (affirming a $500,000 jury award in 1995).

### E. Punitive Damages

Mr. Therrien raises one issue on cross-appeal: whether the district court erred when it refused to submit the issue of punitive damages to the jury. We

review de novo whether the evidence, viewed in the light most favorable to the plaintiff, would support a jury award of punitive damages. *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 995 (10th Cir. 1999).

In Oklahoma a jury may award punitive damages if it finds by clear and convincing evidence that "[t]he defendant has been guilty of reckless disregard for the rights of others," Okla. Stat. Ann. tit. 23, § 9.1(B)(1) (2010), or "acted intentionally and with malice towards others," *id.* § 9.1(C)(1), (D)(1). The Oklahoma Supreme Court has interpreted § 9.1 to require evidence of "reckless disregard toward another's rights from which malice and evil intent may be inferred." *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1106 (Okla. 2005). One acts with reckless disregard if he "was either aware, or did not care, that there was a substantial and unnecessary risk that [his] conduct would cause serious injury to others." Okla. Unif. Civil Jury Instruc.—Civil 5.6, *available at* http://www.oscn.net/applications/oscn/DeliverDocument.asp?CiteID=73977. Further, the conduct "must have been unreasonable under the circumstances, and also there must have been a high probability that the conduct would cause serious harm to another person." *Id.*; *see Black v. M & W Gear Co.*, 269 F.3d 1220, 1239 (10th Cir. 2001). Mr. Therrien contends that the trial evidence would have supported a jury finding of such reckless disregard.

We disagree. Mr. Therrien proffered no evidence that Target's conduct created a high probability of serious harm to another person. Although there was

-31-

evidence of several incidents involving armed shoplifting suspects, none had resulted in injury to a customer, or even to a security officer. And however negligent Target may have been, it would be unreasonable to infer from that conduct that Target possessed an evil intent. We therefore reject Mr. Therrien's cross-appeal.

## III.   CONCLUSION

We AFFIRM the judgment below. Target's motion to seal its Combined Reply and Response Brief is DENIED and the brief will be unsealed 30 days from the filing of this opinion unless Target files (under seal) a motion setting forth precisely what information should be kept confidential and why lesser measures (such as submission of a redacted brief) would not provide effective protection.



THE OKLAHOMA STATE COURTS NETWORK
www.oscn.net

Home | Courts | Court Dockets | Legal Research | Calendar | Help
Previous Section | Top Of Index | This Point in Index | Citationize | Next Section | Print Only
Oklahoma Jury Instructions- Civil

📁**Oklahoma Uniform Jury Instructions**

📁**Oklahoma Jury Instructions- Civil**

📁**Chapter 5**

📄**Section Instruction 5.6 - EXEMPLARY OR PUNITIVE DAMAGES- FIRST STAGE**

Cite as: O.S. §, __ __

Instruction No. 5.6
EXEMPLARY OR PUNITIVE DAMAGES- FIRST STAGE

If you find in favor of [Plaintiff], and grant [him/her] actual damages, then you must also find by a separate verdict, whether [Defendant] (acted in reckless disregard of the rights of others) (and/or) (acted intentionally and with malice towards others).

[Plaintiff] has the burden of proving this by clear and convincing evidence. By that I mean that you must be persuaded, considering all the evidence in the case, that the proposition on which the party has this burden of proof is highly probable and free from serious doubt.

[The conduct of [Defendant] was in reckless disregard of another's rights if [Defendant] was either aware, or did not care, that there was a substantial and unnecessary risk that [his/her/its] conduct would cause serious injury to others. In order for the conduct to be in reckless disregard of another's rights, it must have been unreasonable under the circumstances, and also there must have been a high probability that the conduct would cause serious harm to another person.]

[Malice involves either hatred, spite, or ill-will, or else the doing of a wrongful act intentionally without just cause or excuse.]

If you find that [Defendant] acted (in reckless disregard of the rights of others) or (intentionally and with malice towards others), you may award punitive damages against [Defendant] in a later part of this trial. If you find that [Defendant] did not act (in reckless disregard of the rights of others) or (intentionally and with malice towards others), you may not award punitive damages against [Defendant].

*Notes on Use*

This Instruction is for use in actions filed on or after August 25, 1995. For actions filed before then, see Instruction No. 5.5, supra.

This Instruction should be given when the jury retires to determine liability and the amount of actual damages if there has been a showing of reckless disregard or malice in an action for the breach of an obligation not arising from contract. The trial court should select between the alternatives in the first paragraph, or should give both of them, as the evidence warrants. The trial court should give one or both of the alternatives in the last paragraph, as appropriate, in order to inform the jury of the effect of its findings on the award of punitive damages. The Verdict Forms in Instruction Nos. 5.7 and 5.8 should accompany this Instruction.

If the jury finds reckless disregard or malice by clear and convincing evidence, the trial court should then give the second stage instruction in Instruction No. 5.9, infra, in order for the jury to determine the amount of punitive damages.

All evidence relating to liability for punitive damages should be admitted in the first stage, and evidence which relates solely to the amount of punitive damages should not be admitted until the second stage.

*Comments*

This and the following Instruction are drafted to conform to Okla. Stat. tit. 23, § 9.1 [23-9.1] (Supp. 1995), which provides:

> A. In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may, subject to the provisions and limitations in subsections B, C and D of this section, give damages for the sake of example

and by way of punishing the defendant based upon the following factors: the seriousness of the hazard to the public arising from the defendant's misconduct; the profitability of the misconduct to the defendant; the duration of the misconduct and any concealment of it; the degree of the defendant's awareness of the hazard and of its excessiveness; the attitude and conduct of the defendant upon discovery of the misconduct or hazard; in the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and the financial condition of the defendant.

B. Category I. Where the jury finds by clear and convincing evidence that the defendant has been guilty of reckless disregard for the rights of others, or an insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured, the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award exemplary damages in an amount not to exceed the greater of:

     1. One Hundred Thousand Dollars ($100,000.00); or
     2. The amount of the actual damages awarded.

C. Category II. Where the jury finds by clear and convincing evidence that:

     1. The defendant has acted intentionally and with malice towards others; or

     2. An insurer has intentionally and with malice breached its
duty to deal fairly and act in good faith with its insured,
the jury, in a separate proceeding conducted after the jury has
made such finding and awarded actual damages, may award exemplary
damages in an amount not to exceed the greatest of:
a. Five Hundred Thousand Dollars ($500,000.00),

     b. twice the amount of actual damages awarded, or
     c. the increased financial benefit derived by the defendant or insurer as a direct result of the conduct causing the injury to the plaintiff and other persons or entities.

D. The trial court shall reduce any award for punitive damages awarded pursuant to the provisions of subparagraph c of this paragraph by the amount it finds the defendant or insurer has previously paid as a result of all punitive damage verdicts entered in any court of the State of Oklahoma for the same conduct by the defendant or insurer. D. Category III. Where the jury finds by clear and convincing evidence that:

     1. The defendant has acted intentionally and with malice towards others; or

     2. An insurer has intentionally and with malice breached its duty to deal fairly and act in good faith with its insured, and the court finds, on the record and out of the presence of the jury, that there is evidence beyond a reasonable doubt that the defendant or insurer acted intentionally and with malice and engaged in conduct life-threatening to humans, the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award exemplary damages in any amount the jury deems appropriate, without regard to the limitations set forth in subsections B and C of this section.

E. In determining the amount, if any, of exemplary damages to be awarded under either subsection B, C or D of this section, the jury shall make the award based upon the factors set forth in subsection A of this section.

F. The provisions of this section are severable, and if any part or provision thereof shall be held void, the decision of the court shall not affect or impair any of the remaining parts or provisions thereof.

G. This section shall apply to all civil actions filed after the effective date of this act.

The Oklahoma Supreme Court decided in Smith v. Grizzi, 564 P.2d 1009, 1013 (Okla. 1977) that Okla. Const. art. 7, § 15 required a jury to know the effect of its answer in order to render a general verdict. Accordingly, the Committee has included the last paragraph to explain to the jury the effect of its findings.

The definition of malice is based on that found in Malik v. Apex Int'l Alloys, Inc., 762 F.2d 77, 80 (10th Cir. 1985) ("Malice is defined as a wrongful act done intentionally without just cause or excuse."), and Bennett v. City Nat'l Bank & Trust Co., 549 P.2d 393, 397 (Okla. Ct. App. 1975) ("Malice is defined as the intentional doing of a wrongful act without justification or excuse.").

*Citationizer<sup>©</sup> Summary of Documents Citing This Document*

| Cite | Name | Level |
|------|------|-------|

None Found.

## *Citationizer: Table of Authority*

| Cite Name | Level | |
|-----------|-------|--|
| **Oklahoma Court of Civil Appeals Cases** | | |
| Cite | Name | Level |
| 1975 OK CIV APP 71, 549 P.2d 393, | BENNETT v. CITY NATIONAL BANK AND TRUST CO. | Cited |
| **Oklahoma Supreme Court Cases** | | |
| Cite | Name | Level |
| 1977 OK 91, 564 P.2d 1009, | SMITH v. GIZZI | Cited |

Last viewed by Judge Hartz/Sue Chen on July 12, 2010.