## 15018

STONE v. WARE SHOALS MFG. CO. *ET AL.*

(7 S. E. (2d), 226)

August, 1939.

*Messrs. Osborne, Butler & Moore,* for appellants, 

*Messrs. Johnston & Williams,* for respondent, 

February 16, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The respondent was an employee of the appellant, Ware Shoals Manufacturing Company, as a clerk in its furniture department, and was returning to the store after making a delivery of furniture when he was injured in a motor vehicle accident. As the result of the accident, which occurred on October 31, 1936, his left arm was broken between the wrist and the elbow. The other appellant, Liberty Mutual Insurance Company, was the insurance carrier of Ware Shoals Manufacturing Company under the Workmen's Compensation Act (Act July 17, 1935, 39 St. at Large, page 1231). It is admitted that the injury sustained by respondent arose out and in the course of his employment.

The respondent was furnished medical and hospital treatment, and was paid compensation for the period from the date of the injury to January 14, 1939, on which date he

was fit and able to resume work. A hearing was held on March 31, 1939, before a single commissioner for the purpose of determining the extent of respondent's disability, and on April 17, 1939, the commissioner awarded compensation to the claimant at the compensable rate of $5.00 per week for 25% impairment to the left hand, as provided for in Section 31, Sub-section (m) of the Workmen's Compensation Act; and further ordered payment to the claimant of $750.00, payable in a lump sum, for "serious bodily disfigurement" under Section 31 (t) of the Act.

Appellants have raised no objection to the award made by the single commissioner, allowing compensation for 25% disability to the left hand, but applied to the full Commission for a review of so much of the award as related to the serious bodily disfigurement. The full Commission sustained the single commissioner, and thereafter, upon appeal, the Circuit Court affirmed the action and award of the Commission in respondent's favor. Payment has been made to the respondent of the amount adjudged him for the disability to his left hand, so that this phase of the case is not before us.

Upon appeal to this Court from the judgment below, the appellants raise the issue that the record contains no evidence to support the award for "serious bodily disfigurement." Other questions are presented by the appeal, but a determination of the issue stated will decide the case.

Section 31 (t) of the Workmen's Compensation Act provides, among other things: "That the Industrial Commission created by this Act shall have power and authority to make and award a reasonable compensation for any serious bodily disfigurement received by any employee within the meaning of this Act, not to exceed Twenty-five Hundred ($2,500.00) Dollars."

We have recently held that "serious bodily disfigurement" must bear a definite relationship to earning power. This question was discussed and directly

passed upon in *Manning v. Gossett Mills et al.,* 192 S. C., 262, 6 S. E. (2d), 256, 259, December 16, 1939. In that case the Court stated the condition on which an award may be made for serious bodily disfigurement as follows: "The criterion of the right of claimant to compensation under the Act is this: Has his injury lessened his earning capacity and deprived him in whole or in part of the power to obtain employment?"

In the *Manning case* and in the later case of *Ben C. Johnston v. Sam E. Finley Construction Company et al.,* S. C., 7 S. E. (2d), 1, February 3, 1940, the bodily disfigurement for which compensation was claimed was visible only when the claimant was unclothed. When clothed the disfigurement was completely hidden from view. In the *Johnston case* the rule announced in the *Manning case* was reaffirmed, and in both cases it was held that the claimant was not entitled to compensation under the Act for serious bodily disfigurement, because it was not shown that the injury lessened the earning capacity of or handicapped the claimant in procuring employment.

It becomes necessary to briefly review the evidence in this case, for the purpose of determining therefrom whether the respondent has met the requirements of the above-stated rule.

Dr. J. Warren White, of the Shriner's Hospital in Greenville, who operated on the left arm of the respondent, testified very fully as to the injury and the disfigurement. He said: "When this patient came to me in August, 1937, he had an old fracture of the radius which had not properly united; there was an old fracture and an extremely sensative scar. The end of the ulna was projecting rather abnormally on the other side of his wrist. He had a painful adherent scar from his previous operation on the lateral aspect of his forearm, and an operation was done by myself at the Greenville Hospital on January 22, 1938, when a piece of bone was taken from his leg and used as a graft to bridge across the

hiatus between the two portions of bone which had not united as a result of this original injury. Since that time he has come along satisfactorily and the bone now is as strong as it ever was, I think, and the deformity is a minimum, there is the slightest amount of deformity, of course, and there is some atrophy of the arm, but it is not enough to worry him, I mean, act as actual physical defect, and as he continues to use the arm, this is going to fill out a good deal more, and this very sensitive scar here has loosened up and is much less sensitive than it used to be; and the end of the ulna here where it was removed in order to not interfere with the wrist, so that he has only a moderate limitation of motion of the wrist, and that will gradually improve with use."

He further said that the scar on the inside of the forearm resulting from the operation is five inches long and, with the stitch wounds, possibly a half inch wide, and that the one on the other side is perhaps two inches long and a half inch wide. Neither scar is adherent to the underlying structure, and both of them bleached out nicely. He also described the length and width of the scar on the right leg which resulted from removing the piece of bone used as a graft on the left forearm, and another scar on the left leg over the front of the shin bone.

Dr. White testified that he removed a portion of the end of the ulna (wrist bone); that this operation went to a normal convalescence and resulted in a symmetrical appearing wrist. He examined the arm in January, 1939, approximately a year after the operation, and told the claimant that he could then do heavy work, and even play professional football. He further said that the operative scars on the arm and legs were covered by the claimant's clothing, and could be disclosed to the public only by exhibiting them. In reply to the question, "You did not regard them as a serious disfigurement or as being repulsive or obnoxious in any way to those that might see them," he replied, "I would not; I

suppose they are a disfigurement, but I would not consider them as such." And he went on to say that he could see nothing in the appearance of the scars that would interfere with claimant's obtaining employment of the kind he had been doing.

It is evident that the scars upon the body of the plaintiff are not ordinarily visible, because at the hearing before the single commissioner he was requested to remove his shirt so that the scars could be seen. But even though the scars might be seen if the respondent should roll up his sleeve, we discover no evidence in the record tending to show that they have handicapped or will handicap him in obtaining employment, or in any way lessen his earning capacity.

The hearing commissioner found as a fact that the claimant suffered a serious bodily disfigurement as a result of the injury. This finding was affirmed by the full Commission and by the Circuit Court, but it is evident in the light of the evidence that the Commission and the Court erred in failing to apply the rule announced in *Manning v. Gossett Mills et al., supra,* and in *Johnston v. Sam E. Finley Construction Company et al., supra.*

The evidence ought to show that the bodily disfigurement for which compensation is sought bears some relation to the capacity or incapacity, by reason of it, to secure profitable employment. There should be some showing that by reason of the disfigurement there is no longer any market for the claimant's labor. There is no evidence in the record to suggest this.

The bodily disfigurement, as disclosed by the evidence, is neither a serious nor an unnatural one which would have a harmful effect upon the ability of the respondent to obtain or retain employment. There is an absence of proof that the disfigurement is grotesque or repulsive so as to render the respondent offensive to sight, or less pleasing to employer, fellow worker or customers. In fact, nothing in the evidence reasonably suggests that he has been or will be

handicapped by reason of this disfigurement in procuring employment, or that his earning capacity has been lessened thereby; nor is it suggested that he has failed to secure employment or retain employment by reason of the operative scars referred to.

In the recent case of *Poole v. Saxon Mills et al.,* S. C., 6 S. E. (2d), 761, 764, January 13, 1940, the words "serious" and "disfigurement" in the phrase "serious bodily disfigurement," are fully defined. In that case it was said that the word "serious," as used in the Act, connoted that the disfigurement should be much more than slight, and partaking of permanency. And, among other definitions, that "disfigurement" is, "that which renders unsightly, misshapen, imperfect, or deforms in some manner." In our opinion, not only does the evidence fail to bring the claimant's injury within these definitions, but likewise wholly fails to meet the requirements of the rule announced in the *Manning* and *Johnston cases.* He is not, therefore, under the Act, entitled to compensation for "serious bodily disfigurement."

Judgment reversed.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES CARTER and BAKER and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.