**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 23, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

E. JAMES SPAHR; COLLEEN
SPAHR,

      Plaintiffs - Appellees,

v.

FERBER RESORTS, LLC, d/b/a
Rodeway Inn & Suites,

      Defendant - Appellant.

No. 10-4055
(D.C. No. 2:08-CV-00072-CW)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **TACHA**, and **LUCERO**, Circuit Judges.

Defendant-Appellant Ferber Resorts, LLC ("Ferber Resorts") appeals from

a judgment on a jury verdict awarding $393,001.45 to Plaintiff-Appellee James

Spahr on his negligence claim and $42,498.55 to Plaintiff-Appellee Colleen

Spahr, his wife, for loss of consortium. After trial, Ferber Resorts unsuccessfully

moved for judgment as a matter of law or, in the alternative, a new trial or

remittitur. Utah law applies in this diversity case, and our jurisdiction arises

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

under 28 U.S.C. § 1291.  We affirm.

Background

Because this is an appeal from the denial of judgment as a matter of law, we view the facts in the light most favorable to the non-moving party—here, Mr. and Mrs. Spahr.  Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs, 613 F.3d 1229, 1235 (10th Cir. 2010) (citation omitted).  Viewed in this light, the evidence established the following facts.

From October 1-4, 2006, Mr. and Mrs. Spahr were guests at the Rodeway Inn in Springdale, Utah, near Zion National Park.  Aplt. App. 609-10, 941. Ferber Resorts owned and operated the facility, which consisted of four separate structures.  Aplt. Br. 5; Aplee. Supp. App. 13.  The main office—and an ice machine—were housed in a building separate from that which contained the Spahrs' room.  Aplee. Supp. App. 13.  A ditch or wash that channeled runoff from the surrounding hills ran between the two buildings.[1]  Id.  The hotel's parking lot extended from the main office to the front of the separate building, crossing the wash.  Id. at 13, 14.  Guests in the separate building could safely access the main office by walking through the center of the parking lot or by crossing the wash on a small footbridge located a short distance north of the parking lot.  Id. at 13.  To

---

[1] The Spahrs refer to the ditch as a "pit" or "hole," while Ferber terms it a "natural wash" or "culvert."  For purposes of this appeal, we use the terms "ditch," "wash" or "culvert" interchangeably.

use the bridge, guests in the Spahrs' room would have to walk behind the separate building across concrete pavers in the grass—a route that was not illuminated at night. Id. at 13, 15; Aplt. App. 523. By contrast, the parking lot was directly in front of the Spahrs' room and was designed to be lighted at night. Aplee Supp. App. 13; Aplt. App. 970-71.

The wash flowed under the parking lot by means of a culvert. Aplee. Supp. App. 13. Although it varied in width and depth, where the wash intersected the parking lot it was approximately six feet deep and seven feet wide. Id. at 4, 11, 13. At this intersection concrete wingwalls—designed to funnel runoff into the culvert and under the parking lot—bolstered the wash on three sides. Id. at 5, 14. The asphalt surface of the parking lot surrounded the wingwalls—in other words, the six-foot drop of the wash protruded into the parking lot for a distance of several yards. Id. Large rocks shielded two sides of the wash, but not the side facing the Spahrs' building. Id. at 7, 14.

On the morning of October 4, 2006, the Spahrs awoke at 4:30 a.m. Aplt. App. 515. Shortly before 6:00, Mr. Spahr left the room carrying a cooler, intending to fill it with ice near the main office. Id. at 519-20, 581. Instead of walking through the center of the parking lot or to the footbridge via the concrete pavers—where it was dark—Mr. Spahr saw the lights of the main office and headed directly towards them along the north edge of the parking lot. Id. at 522-23; Aplee. Supp. App. 14. Ambient lighting illuminated the parking lot, but it

- 3 -

was too dark for Mr. Spahr to distinguish between the black of the asphalt and the darkness of the wash. Aplt. App. 523-24. Mr. Spahr stepped directly off the edge of the parking lot into the six-foot drop of the wash. Id. at 524, 528-29. Although there was a light pole adjacent to the wash, the light was not on when Mr. Spahr fell. Id. at 543-44, 612; Aplee. Supp. App. 14. The lights in the parking lot were controlled by means of a timer, which had to be manually adjusted as the days grew shorter. Aplt. App. 970-71; Aplee. Supp. App. 16. On October 4, the timer was set to extinguish the lights at 6:00 a.m.—even though it was still dark at that time. Aplt. App. 612.

The fall severed the patellar tendon in Mr. Spahr's left knee. Id. at 317, 613-14. After his fall, Mr. Spahr could not climb out of the wash, and he called for help for twenty minutes before assistance arrived. Id. at 613. As a result of his injuries, Mr. Spahr incurred approximately $30,000 in economic damages. See id. at 101. He underwent four months of physical therapy; although he regained some use of his knee, he did not fully recover. Id. at 561, 567-68, 573. Mr. Spahr can no longer climb ladders or kneel down—activities necessary to his hobbies, which included carpentry and gardening. Id. at 504, 506, 573. Moreover, he cannot engage in activities he used to enjoy, such as jogging, hiking, ice skating, or racquetball, without pain. Id. at 503-04, 567-70. The injury also negatively affected his intimate life, id. at 571, and there remains a large scar on his knee which Mr. Spahr describes as "traumatic." Id. at 573-74;

Aplee. Supp. App. 80-82.

In 2008, Mr. Spahr brought a negligence suit against Ferber Resorts. See Aplt. App. 3, 19. Mrs. Spahr brought a derivative action for loss of consortium. Aplt. App. 20; see Utah Code Ann. § 30-2-11. After a week-long trial, the jury awarded $393,001.45 to Mr. Spahr on his negligence claim and $42,498.55 to Mrs. Spahr for loss of consortium. Aplt. App. 103-04. The damage awards reflect a downward adjustment of one percent to account for Mr. Spahr's comparative negligence. Spahr v. Ferber Resorts, LLC, 686 F. Supp. 2d 1214, 1217 (D. Utah 2010); Aplt. App. 100. After trial, Ferber Resorts moved for judgment as a matter of law or, in the alternative, for a new trial or remittitur of damages. See Spahr, 686 F. Supp. 2d at 1216; Doc. Nos. 96, 97.[2] The district court denied the motion. See Spahr, 686 F. Supp. 2d at 1217; Aplt. App. 128.

On appeal, Ferber Resorts argues first that the district court erred in submitting the case to the jury. According to Ferber, it owed no duty to warn or protect Mr. Spahr because the wash and the darkness were open and obvious conditions, and the lack of lighting was a temporary condition which it had no notice of or opportunity to remedy. Aplt. Br. 14-15. Second, Ferber argues that Mr. Spahr was not "injured" within the meaning of Utah Code § 30-2-11, which

---

[2] Ferber did not include a copy of the motion in its appendix as required by Fed. R. App. P. 30(a)(1)(B) and 10th Cir. R. 30.1(A)(1) and 10.3(D)(2). We have accessed the motion through the district court's docket, but do not recommend relying upon this discretionary procedure. See Tenth Cir. R. 10.3(B); Allan v. Springville City, 388 F.3d 1331, 1334 (10th Cir. 2004).

governs loss of consortium.  Id.  Third, it claims that the district court should have granted a new trial on the basis of counsel's improper closing argument.  Id. at 15.  Finally, Ferber contends that it is entitled to remittitur and a new trial because the damages were excessive and not supported by the evidence.  Id.

## Discussion

### A.    Denial of Judgment as a Matter of Law.

Our review of the denial of a Rule 50 motion is de novo.  Escue v. N. Okla. College, 450 F.3d 1146, 1156 (10th Cir. 2006).  Only when the evidence would not permit a reasonable jury to find in favor of the non-movant would judgment as a matter of law be required.  Manzanares v. Higdon, 575 F.3d 1135, 1142 (10th Cir. 2009).  In evaluating the denial of a Rule 50 motion, we view the evidence and its inferences in the light most favorable to the non-moving party.  Palmer v. City of Monticello, 31 F.3d 1499, 1503 (10th Cir. 1994).  We may not "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury."  Manzanares, 575 F.3d at 1142 (internal quotation marks and citation omitted).

In this case Ferber Resorts moved for judgment as a matter of law on two issues: (1) whether sufficient evidence supported a finding that Ferber Resorts owed a duty to Mr. Spahr, and (2) whether sufficient evidence supported a finding that Mr. Spahr was "injured" within the meaning of Utah Code § 30-2-11.  Doc.

97 at 3.  We address each in turn.

    *1. Legal Duty.*

Ferber Resorts' duty towards business invitees is governed by the Restatement (Second) of Torts applicable in Utah.  See Hale v. Beckstead, 116 P.3d 263, 265-66 (Utah 2005).  Section 343 of the Restatement provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.
>
> Restatement (Second) of Torts § 343 (1965).

Restatement § 343A governs "known or obvious dangers."  Under that section "[a] possessor of land is not liable to his invitees for physical harm caused to them by any . . . condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."  Restatement (Second) of Torts § 343A; see Beckstead, 116 P.3d at 266 (applying § 343A).

In this case, the jury found that the injury-causing condition was not known or obvious.  Aplt. App. 98.  Sufficient evidence supports the jury's finding:

photographs showed that rocks and parked cars obscured the wash from view, see Aplee. Supp. App. 8; both Mr. and Mrs. Spahr testified that they did not notice the wash where it intersected with the parking lot until after the accident, see Aplt. App. 352, 508, 524; and Mr. Spahr testified that he did not see the wash on the morning of the accident given low lighting. Id. at 523-24.

Because the jury found that the wash was not known or obvious—a conclusion supported by the evidence presented at trial—Restatement § 343, not § 343A, governs.[3] See Restatement (Second) of Torts § 343; id. § 343A (governing only known or obvious dangers); Beckstead, 116 P.2d at 266. The record reveals ample evidence to support each element of § 343.

First, evidence supports the jury's finding that Ferber Resorts knew or should have known about the wash and should have realized that it involved an unreasonable risk of harm. See Restatement (Second) of Torts § 343(a). Stewart Ferber—the principal of Ferber Resorts, LLC—testified that he bought the

---

[3] In its reply brief, Ferber Resorts cites Pratt v. Mitchell Hollow Irrigation Co., 813 P.2d 1172-73 (Utah 1991), for the proposition that in Utah drainage ditches are "open and obvious" as a matter of law. Aplt. Reply Br. 4. As this argument appears for the first time in reply, we need not consider it. See Planned Parenthood of Rocky Mountain Servs., Corp. v. Owens, 287 F.3d 910, 927 n.18 (10th Cir. 2002). Likewise, Ferber Resorts' argument that this case is governed by attractive nuisance cases is raised for the first time in the reply brief. See Aplt. Reply Br. 5. Regardless, those arguments are off base—the wash protruded into the parking lot, which was an approved means of egress and ingress for business invitees. An unlit, six-foot-deep chasm in an approved path of travel differs significantly from the run-of-the-mill irrigation ditches discussed in Pratt and other cases. See, e.g., Pratt, 813 P.2d at 1171; Trujillo v. Brighton-North Point Irrigation. Co., 746 P.2d 780, 781 (Utah 1987).

property and designed the layout of the hotel, that he knew the wash separated the office from the guest rooms, and that he "accept[ed] 100% responsibility" for safety at the hotel. Aplt. App. 921-25, 975. An employee of Ferber Resorts, David Prisbrey, testified that he was directly involved in constructing the culvert and that he thought the culvert should be covered to prevent people from falling in. Id. at 731, 735. Evidence also showed that Ferber Resorts knew the lights were controlled by an automatic timer that required manual adjustment to keep up with changing daylight hours. Id. at 970-71. Finally, evidence showed that Ferber Resorts considered the parking lot a safe means of ingress and egress—even at night, and even though the wash protruded into the parking lot and was surrounded by pavement on three sides. Id. at 972-74.

Second, there was sufficient evidence for the jury to conclude that Ferber Resorts should have expected that the guests would not discover or realize the danger, or that they would fail to protect themselves against it. See Restatement (Second) of Torts § 343(b). Photographs admitted at trial show that the wash—which protruded into the parking lot and was surrounded by asphalt or concrete on three sides—was partially obscured by boulders, making it possible that a guest would not notice it during the daylight. Aplee. Supp. App. 8, 14. Witnesses testified that the parking lot was part of the approved means of egress and ingress between the guest rooms and the office and that rocks had previously surrounded the entire culvert but had been removed where Mr. Spahr fell. Aplt.

App. 685-87, 689, 732.  Mr. Spahr also testified that there was minimal light at the time of the accident.  Id. at 523-24.  The lights were set to turn off at 6:00 a.m.—even though it was still dark at that time, id. at 670, 672, 701, 739—and in the low-light conditions, Mr. Spahr could not distinguish between the black of the asphalt and the darkness of the wash.  Id. at 523-34.

Finally, evidence supports the jury's conclusion that Ferber Resorts failed to exercise reasonable care to protect the Spahrs against the danger. See Restatement (Second) of Torts § 343(c).  David Prisbrey testified that he spoke to Mr. Ferber about his concerns that people might fall into the wash, Aplt. App. 735-36, yet Ferber Resorts did not warn the guests or construct any sort of barrier to protect them from injury.  See Aplee. Supp. App. 13.  Further, Ferber Resorts did not ensure that the wash was illuminated in low-light conditions—certainly a reasonable step that could have been taken.  Finally, Ferber Resorts surrounded the wash with boulders on two sides, but left one side completely open.  Id. at 11; Aplt. App. 958, 960.

In sum, there is ample evidence from which the jury could conclude that Ferber Resorts was liable under the elements of the Restatement § 343. Therefore, the district court did not err in denying Ferber Resorts' motion for judgment as a matter of law.

Ferber Resorts advances several arguments on appeal, each of which is unavailing.  First, Ferber Resorts argues that the wash is "unquestionably" an

open and obvious hazard, thereby precluding any legal duty to Mr. Spahr. Aplt. Br. 22-24. Although the existence of a legal duty is a question of law, <u>Ottens v. McNeil</u>, 239 P.3d 308, 317 (Utah Ct. App. 2010), it must be answered "under all the facts." <u>Downing v. Hyland Pharmacy</u>, 194 P.3d 944, 948 (Utah 2008) (internal quotation marks and citation omitted). No matter how strenuously Ferber Resorts may disagree with the jury's finding on this issue, it is amply supported by the evidence.

Second, Ferber Resorts argues that the darkness was open and obvious, and therefore under the "step in the dark rule" it owed no legal duty to Mr. Spahr. Aplt. Br. 25. However, like the prior argument, this ignores the jury's finding that the hazardous condition—whether that condition be the open wash, the darkness, or some combination of the two—was not known or obvious. Aplt. App. 98. Because this conclusion is supported by the evidence, any argument premised on alternative factual findings must fail on appeal.

Even if Ferber Resorts' argument comported with the jury's factual findings, it seriously misapprehends Utah law. The common law "step in the dark" rule is one of contributory negligence. <u>See</u> <u>Black v. Nelson</u>, 532 P.2d 212, 214 & n.3 (applying the "step in the dark rule" as a complete bar to recovery); 62A Am. Jur. 2d Premises Liability § 760 (2010) (noting that the step in the dark rule is one of contributory negligence); 65A C.J.S. Negligence § 742 (2010) (same). Utah abandoned its contributory negligence framework in 1973. <u>See</u>

Beckstead, 116 P.2d at 268. Black v. Nelson applied the step in the dark rule only because the facts of that case occurred before passage of the Comparative Negligence Act. See Nelson, 532 P.2d at 214 n.3. Tellingly, Ferber Resorts cites no subsequent case applying the rule—and indeed there are none, because the rule was abandoned in 1973 along with the rest of the old contributory negligence regime.

Finally, Ferber Resorts argues that it cannot be liable because the insufficient lighting was a temporary condition and the Spahrs did not prove notice and an opportunity to remedy the condition. Aplt. Br. 28. However, Utah courts have made it clear that notice and opportunity to remedy are necessary only when a third party creates the temporary unsafe condition—"If the unsafe condition or defect was created by the defendant himself or his agents or employees, the notice requirement does not apply." See Jex v. JRA, Inc., 196 P.3d 576, 582 (Utah 2008) (internal quotation marks, brackets, and citation omitted); see also Canfield v. Albertsons, Inc., 841 P.2d 1224, 1226 (Utah Ct. App. 1992) (plaintiff does not need to establish notice where defendant creates the unsafe condition). Here, Ferber Resorts constructed the parking lot and the culvert, positioned the buildings such that the wash was between the office and guest rooms, and either directly or indirectly ordered the removal of rocks from one side of the wash. Aplt. App. 731-32, 921-25. Ferber Resorts also installed an automatic timer on the parking lot lights, and was in control of adjusting the timer

along with waning daylight.  Id. at 725-26, 970-71.  Thus, the evidence

establishes that Ferber Resorts created the dangerous condition.  Under these

circumstances, notice and opportunity to remedy are not required.  See Jex, 196

P.3d at 582.  For this same reason we reject Ferber Resorts' argument that the

jury should have been instructed on the requirement of notice and opportunity to

remedy.  See Aplt. Br. 30.

  *2. Utah Code § 30-2-11.*

  Utah Code § 30-2-11 governs recovery for loss of consortium claims. In

relevant part, § 30-2-11 provides:

> (1) For purposes of this section:
>
> (a) "injury" or "injured" means a significant permanent injury to a person that substantially changes that person's lifestyle and <u>includes</u> the following:
>
> (i) a partial or complete paralysis of one or more of the extremities;
>
> (ii) significant disfigurement; or
>
> (iii) incapability of the person of performing the types of jobs the person performed before the injury . . . .
>
> Utah Code Ann. § 30-2-11 (emphasis added).

  The plain language of the statute indicates that the injuries listed in

subsections (i)-(iii) are illustrative, not exhaustive.  See Black's Law Dictionary

(9th ed. 2009) (defining "include" as "To contain as a part of something.  The

participle *including* typically indicates a partial list. . . .  But some drafters use

phrases such as *including without limitation* and *including but not limited to*—which mean the same thing").  The Utah Supreme Court has interpreted statutes with similar language as providing an illustrative—not exhaustive—list.  See Devore v. Bostrom, 632 P.2d 832, 835 (Utah 1981) ("Although the foregoing section lists many expenses that are included as incidental damages, the list is not intended to be exhaustive but is merely illustrative of the kinds of incidental expenses which can be recovered.").

Despite the statute's plain language, one Utah case gives us pause.  In Boyle v. Christenson, the Utah court of appeals addressed the same issue before us, namely whether the plaintiff in a loss of consortium action produced sufficient evidence of "injury" within the meaning of § 30-2-11.  219 P.3d 58, 62 (Utah Ct. App. 2009).  The court of appeals upheld the district court's determination that the plaintiff did not prove an "injury" under subsection (iii) because the plaintiff maintained the same employment both before and after the injury.  Id. at 63.  The plaintiff was also unable to prove either paralysis (subsection (i)) or significant disfigurement (subsection (ii)).  Id.

However, Boyle does not dispose of the issue.  The court specifically noted that "both parties argued to the district court and on appeal that no loss of consortium claim will lie *unless* the injured spouse suffers paralysis of an extremity, significant disfigurement, or job incapacity.  Accepting this interpretation of the statute for purposes of this appeal, we agree with the district

court." Id. at 62-63 (underlining added). In a footnote, the court emphasized that it "express[ed] no opinion on whether the parties are correct in their interpretation of section 30-2-11(1)(a)." Id. at 63 n.3. Thus, the court of appeals was not definitively interpreting the statute, but rather merely addressing the arguments before it.

Without clear guidance from the Utah Supreme Court, we must anticipate how that court might rule. Lamb v. Rizzo, 391 F.3d 1133, 1137 (10th Cir. 2004). Given the plain language of § 30-2-11, the Utah Supreme Court's interpretation of similar statutes, and the absence of any authority to the contrary, we predict that the Utah Supreme Court would treat the listed injuries in § 30-2-11(1)(a)(i)-(iii) as illustrative, not exhaustive. Thus, denial of judgment as a matter of law was appropriate so long as there is evidence from which a reasonable jury could conclude that Mr. Spahr suffered a "significant permanent injury" that "substantially change[d] [his] lifestyle." Utah Code Ann. § 30-2-11.

The record reveals sufficient evidence for such a finding. Mrs. Spahr testified that her husband used to enjoy hiking, tennis, and golf, Aplt. App. 348, but no longer could, id. at 377-78. She also noted that Mr. Spahr's "spirits are broken," that "[h]e's not the same person that has the lightheartedness that he had before," and that when he does any landscaping or gardening he has to lie down instead of kneel. Id. at 378-79. Similarly, Mr. Spahr testified that he used to enjoy physical activities such as jogging, playing racquetball and tennis, golfing,

and ice skating, see id. at 503-06, but since the accident he cannot, id. at 567-569. Mr. Spahr also testified that the injury negatively effected other, more simple activities, such as getting on the floor to play with his grandchild. Id. at 569-70, 573.

Even if § 30-2-11 sets forth an exhaustive list, our disposition remains the same. Both Mr. and Mrs. Spahr testified as to the extent of the scarring on Mr. Spahr's knee. Specifically, Mrs. Spahr noted that for a period of time after the injury Mr. Spahr refused to wear shorts because he did not want people looking at the scars, id. at 392, 394-95, and Mr. Spahr testified that the scarring remained and was ugly and "traumatic," id. at 573. The jury could reasonably conclude from this evidence that the fall resulted in a "significant disfigurement." See Utah Code Ann. § 30-2-11(1)(a)(ii). Therefore, the district court correctly denied Ferber Resorts' motion for judgment as a matter of law on Mrs. Spahr's loss of consortium claim.

Ferber Resorts argues that "significant disfigurement" requires "a permanent and serious disfigurement, one that affects the earning capacity or employment of an injured person, and it does not include an operative scar on a body part—like the knee—that is not ordinarily visible." Aplt. Br. 35 (citing Stone v. Ware Shoals Mfg. Co., 7 S.E.2d 226 (S.C. 1940)). Stone—in addition to being quite dated and from South Carolina instead of Utah—interpreted South Carolina's Workmen's Compensation Act, which required compensation for "any

serious bodily disfigurement." Stone, 7 S.E.2d at 227 (emphasis added). "Serious" suggests a higher standard than "significant." Thus, Stone is of marginal persuasive value in these circumstances.

Ferber Resorts makes no other arguments that Mr. Spahr is not "significantly disfigured," other than "there is no evidence that the scar to Mr. Spahr's knee still exists today . . . or that it is anything other than an operative scar that is not ordinarily visible." Aplt. Br. 35. However, this argument is contrary to the evidence. Mr. and Mrs. Spahr testified as to the existence and extent of scarring. Aplt. App. 392, 394-95, 573. Accordingly, we reject this argument.

B. New Trial and/or Remittitur.

The district court's decision to deny a motion for a new trial is reviewed for abuse of discretion. M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d 753, 762 (10th Cir. 2009). We are mindful of the vantage point of the district judge, who is usually in the best position to determine any prejudice and the need for a new trial. Whittenburg v. Werner Enterps., Inc., 561 F.3d 1122, 1127 (10th Cir. 2009). Repetition and emphasis of improper remarks may suggest a need for a new trial. Id. at 1131. This is particularly true where the district court fails to take corrective action, id., and where the size of the jury award suggests actual prejudicial effect, id. at 1132.

Given state substantive law, whether the verdict was excessive is

determined with reference to state law.  In re Universal Serv. Tel. Billing Practice Litig., 619 F.3d 1188, 1209 (10th Cir. 2010) (citing Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp., 315 F.3d 1271, 1281 (10th Cir. 2003)).  However, we review the district court's application of that state-law standard for abuse of discretion.[4]  Id.  Under Utah law, a court may reduce the jury's award of damages if it is "so excessive as to be shocking to one's conscience and to clearly indicate passion or prejudice, and it abundantly appears that there is no evidence to support or justify the verdict."  Stamp v. Union Pac. RR Co., 303 P.2d 279, 284 (Utah 1956) (Crockett, J., concurring) (internal quotation marks and citation omitted); see also Utah R. Civ. P. 59(a)(5) (new trial may be granted upon showing of "[e]xcessive . . . damages, appearing to have been given under the influence of passion or prejudice").

Ferber Resorts moved the district court for a new trial or remittitur on two grounds: (1) allegedly improper statements by the Spahrs' trial counsel during closing argument and (2) excessive damages awarded by the jury.  See Doc. 97 at 12-13, 17.  The district court rejected both of these arguments.  Spahr, 686 F. Supp. 2d at 1221-24.  We address each in turn.

_____

[4] The district court applied a federal-law standard in denying Ferber Resorts' motion for a new trial or remittitur.  Spahr, 686 F. Supp. 2d at 1221. However, for our purposes the two standards are the same—it makes no difference which standard we apply on appeal, as the district court did not abuse its discretion under either.  Compare Blanke v. Alexander, 152 F.3d 1224, 1237 (10th Cir. 1998) (federal law standard) with Judd v. Drezga, 103 P.3d 135, 151 (Utah 2004) (state law standard).

*1. Closing Statement.*

Before the district court and on appeal, Ferber Resorts asserts that closing argument was improper for four reasons: counsel referred to matters not in the record, interjected his personal opinions into the proceeding, implied intentional malevolence on the part of Ferber Resorts, and attacked Ferber Resorts' right to defend the action. See Doc. 97 at 18; Aplt. Br. ii.

At the outset, we have serious concerns as to whether Ferber Resorts preserved this issue for review. During closing argument, Ferber Resorts objected only once, and only after the Spahrs' counsel made several statements regarding how difficult it was for the Spahrs "to sit here and tolerate these kinds of accusations for one purpose only, so Ferber Resorts simply will not accept responsibility." Aplt. App. 1036. Ferber Resorts objected because those statements "conflated litigation difficulty with . . . damages that are recoverable under tort law." Id. at 1036-37. The district court immediately sustained this objection. Id. at 1037. Ferber Resorts did not request a limiting instruction, immediately move for a mistrial, or object to any of the other allegedly improper statements they challenged in their motion for a new trial.

To preserve an issue for review, a party must make a contemporaneous objection or otherwise give the trial court the opportunity to remedy the claimed error. See, e.g., United States v. Hernandez-Muniz, 170 F.3d 1007, 1011 (10th Cir. 1999); Angelo v. Armstrong World Indus., Inc., 11 F.3d 957, 962 (10th Cir.

- 19 -

1993). This is particularly true at closing argument: "a party may not wait and see whether the verdict is favorable before deciding to object." Computer Sys Eng'g, Inc. v. Qantel Corp., 740 F.2d 59, 69 (1st Cir. 1984). In this case, had Ferber Resorts objected, the objections might have been sustained and any error avoided. Further, Ferber Resorts could have requested a limiting instruction or moved for a mistrial immediately following closing.

Because Ferber Resorts failed to preserve the issue, we review it only for plain error against the entire record. See, e.g., Therrien v. Target Corp., 617 F.3d 1242, 1257-58 (10th Cir. 2010). Thus, the error must be plain under current law and affect substantial rights. Id. at 1253. If that is the case, an appellate court may exercise its discretion to correct the error where it seriously affects the fundamental fairness, integrity or reputation of the proceedings. Id. Ferber Resorts relies heavily upon the facts in Whittenburg v. Werner Enterprises, Inc., but in that case the improper statements (a) were the subject of objection so an abuse of discretion standard applied, and (b) included an out-of-bounds reading of an "imaginary letter" by counsel with facts not supported by the record. 561 F.3d at 1128. In this case, while some of counsel's statements pushed the envelope, they do have some basis in the evidence or its inferences. We note that the jury was instructed that "statements and arguments of counsel are not evidence." Aplt. App. 994. After carefully considering the entire record, we do not think that this argument rendered the proceedings fundamentally unfair or seriously affected the

integrity or public perception of the proceedings.

   *2. Damages.*

   Ferber Resorts' final argument on appeal is that the district court erred in denying its motion for remittitur or a new trial based on the jury's award of damages, which it claims is unsupported in the evidence, excessive, or the result of prejudice or bias. Aplt. Br. 51.

   The jury awarded Mr. Spahr $31,216.41 in economic damages and $375,855.76 in non-economic damages. Aplt. App. 101. It also awarded $2,927.83 in economic and $40,000 in non-economic damages to Mrs. Spahr for loss of consortium. Aplt. App. 101-02. Both were adjusted downward by one percent to account for the jury's conclusion that Mr. Spahr was slightly at fault. See Spahr, 686 F. Supp. 2d at 1221; Aplt. App. 100.

   The district court concluded that the damages were not excessive given the evidence at trial. Spahr, 686 F. Supp. 2d at 1221-22. The court noted that the Spahrs "put on a great deal of evidence" to support their claim for non-economic damages, including extensive testimony regarding the pain, mental anguish, and emotional suffering Mr. Spahr endured both with regard to the actual injury and the resulting life changes. Id. at 1221. The court also detailed the testimony regarding Mr. Spahr's long and painful trip home, extensive rehabilitation, and lingering effects on his personal life. Id. at 1221-22.

   We see no abuse of discretion here. We agree with the district court that

"while $393,000 is a considerable sum, it can hardly be called a windfall when one considers the evidence put on about the incident and its consequences." Id. at 1222. This conclusion is further bolstered by two cases in which we upheld similar awards.

In Blanke v. Alexander, the jury awarded $500,000 to the plaintiff and $17,000 for her daughter. 152 F.3d at 1228. The plaintiff had suffered a fractured femur and ankle as well as extensive bruising. Id. at 1227. Her daughter complained of pain in her hand and back, and testified that after the accident she was sad and scared. Id. The plaintiff incurred $29,564.77 in medical expenses and would incur approximately $5,000 for future medical expenses. Id. at 1236-37. The defendant moved for remittitur of the damages, which the district court refused, and the Tenth Circuit upheld the damage award in the face of defendants' arguments that the award was excessive.

Similarly, in Johnson v. Wal-Mart Stores, Inc., a jury awarded $407,603.92 to the plaintiff who had slipped, fallen, and injured her knee because of a spilled beverage. No. 98-2062, 1998 WL 788821, at *1 (10th Cir. Nov. 10, 1998) (unpublished). At trial, plaintiff testified that she experienced temporary knee and back pain, and subsequently underwent two knee surgeries and physical therapy. Id. Her medical bills totaled approximately $26,600, id. at *2, and the plaintiff was not permanently disabled, id. at *1. In an unpublished order and judgment we upheld the district court's refusal to grant the defendant's motion for

remittitur.  <u>Id.</u>

Given the evidence in this case, we cannot say the district court abused its discretion in refusing to grant a new trial or remittitur in this case.  To the extent that Ferber Resorts attempts to frame the issue as a substantive due process claim, <u>see</u> Aplt. Reply Br. at 13, it raises that argument for the first time in its reply brief and we will not consider it.  <u>See</u> <u>Planned Parenthood of Rocky Mountain Servs.</u>, 287 F.3d at 927 n.18 ("Because this issue was raised for the first time in the State's reply brief, we do not address it here.").

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge